(15 App. Div. 461.)

## LONGWORTH v. DEANE et al.

(Supreme Court, Appellate Division, First Department. March 19, 1897.)

COVENANTS—INTERPRETATION—BUILDING RESTRICTIONS.

    A covenant against the erection of "any tenement house,—not meaning, however, what is known as a flat or apartment house, provided that they be equal in class" to specified buildings,—is a covenant against construction, and not against use; and therefore, if the building erected is of the required standard, it may be used afterwards for any purpose.

    Williams, J., dissenting.

Appeal from special term, New York county.

Action by Mary A. Longworth against Bennett A. Deane and another. There was a judgment in favor of plaintiff, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John M. Bowers, for appellants.

C. D. Ridgway, for respondent.

PATTERSON, J. The learned judge at special term based his decision in this cause upon what was held by the court of appeals in the case of Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741. If the facts as they appear in this record were identical with those in the case cited, the same rule of construction of the covenant restricting the whole block of ground mentioned in the complaint, and settling the

rights of the parties, would necessarily have to be adopted in this suit. It was held in the Amerman Case, with reference to a lot located upon the same block of ground as that owned by the plaintiff, that the covenant contained in the various conveyances made by Brown, the original owner, was one running with the land, and that a grantee of one of the lots might maintain an action for breach of the covenant against the use for an interdicted purpose by another grantee of land from the same common source of title, and that while, under the peculiar circumstances of the case, an injunction against such use would not be issued, the action might be maintained in a court of equity, and damages awarded for breach of the covenant, upon condition that the covenant be released by the plaintiff in favor of the defendant. The general principle of law asserted in the Amerman Case was not modified by the subsequent decision of the court of appeals in the case of Society v. Brennan, 148 N. Y. 661, 43 N. E. 173. That case was decided upon certain facts appearing upon the record, and on those facts it was held that there was no intention of the original grantor, either expressed or to be implied, to place a restriction upon the easterly half of the block of land therein involved. The Amerman Case and the Equitable Gaslight Company Case were both decided upon special facts, and they are not in conflict with each other. But, as this case now comes before us, the question presented is radically different from that which was before the court of appeals in the Amerman Case. The original covenant made by Brown was, among other things, distinctly, that the covenantor, his heirs and assigns, would not at any time thereafter erect, cause, permit, or suffer to be erected, "any tenement house," etc. That covenant was modified by the plaintiff's predecessor in title by an agreement with the executors of Brown, and, in the deed by which the plaintiff's premises were conveyed to her, it is recited that the premises are subject to a covenant against nuisances, as modified by an agreement dated the 29th of February, 1884. That modification, which applied also to the premises belonging to the defendants (they being grantees and assigns of Brown, and the covenant having been made in favor of the assigns as well as the executors of Brown), reads as follows: "Nor any tenement house,—not meaning, however, what is known as a flat or apartment house, provided they be equal in class to No. 336 West 47th street, or to No. 346 West 47th street." As the covenant originally stood, it was a covenant against use, and not against construction. That was specifically pointed out in the opinion of the court of appeals in the Amerman Case, where it is said that "the plaintiff's damages depended, not upon the construction of the building, but the use made of it." The modification changed the covenant to one against construction, and not against use, for by that modification a flat house or an apartment house was excluded from the operation of the covenant; and, more than that, a standard of construction was set up by the modification, namely, that of the class of building known as "No. 336 West Forty-Seventh Street" or "No. 346 West Forty-Seventh Street." If buildings to be constructed by grantees of land on the block in question were equal in class to the houses mentioned in Forty-Seventh street, there would be no violation of the covenant. It certainly was the in-

tention of the parties to fix a standard of building that might be erected, and, if structures built upon this block conformed to that standard, any use to which the buildings in Forty-Seventh street might be put from time to time, at the caprice of their owners, could not affect the nature of the covenant relating to the premises in question. This modification did not create a merely personal covenant with the executors of Clarence Brown, or one for the benefit of the grantors. It might be susceptible of that construction, were it not that the instrument by which the modification was made specifically states that it was understood and agreed between the parties that the covenant should run with the land. That was an agreement signed, not only by the plaintiff's predecessor in title, but by various other owners, thus indicating that the modified covenant was to bear the same relation to the whole block as the original covenant did before it was changed. It thus results that, when the conveyance was made to Bertha Deane of the property on the southeast corner of the block, that property was burdened with a restriction, in favor of this plaintiff and of other lot owners on the block, against the construction of a house which should not be equal in class to either of the two designated houses in Forty-Seventh street, and the breach of that covenant for which the defendants in this action would be liable would be the construction of a building not equal in class to either of the houses on Forty-Seventh street referred to. The learned judge in the court below in his decision of this case did not consider it with respect to the real effect of the changed aspect of the covenant. While he alludes in his opinion to that change, he merely comments upon it with reference to its not destroying the mutuality of the covenant. He held that the change in the covenant, in order to defeat the plaintiff's right of action, must be of such a character as to render it no longer mutual, and that the facts disclosed in evidence did not authorize the defendants to put up the tenement house which they did erect on Sixty-Fourth street; and he seems to have regarded the case made as only involving the right of the defendants to set up changed conditions in the neighborhood as a reason that would render the enforcement of the restriction inequitable.

We think, therefore, that the case was not disposed of in the court below upon the proper construction of the covenant, nor upon evidence with respect to the real character or class of building that was put up by Mrs. Deane under the modified covenant. There is some obscurity in the testimony relating to the class of buildings in which either of the two houses in Forty-Seventh street would be included, or as to whether there is a particular designated class to which they belong or could be assigned. Mr. Hawes, one of the witnesses for the plaintiff, states that they are third-class flat houses. Mr. Deane, the husband of the defendant Deane, and who attended to the construction of her buildings in Sixty-Fourth street, testifies that they were equal in character and class to those in Forty-Seventh street; that they cost more to build; that they were built of excellent material; and that, as he designed them, the apartments contained in the houses were to be for the accommodation of two families on a floor only, which was the same character of con-

struction with reference to intended use as that of the two houses in Forty-Seventh street. There is some slight conflict. in the evidence with respect to the correspondence or want of correspondence of the defendants' property, as now used, with the two houses in Forty-Seventh street, but the testimony of Deane is substantially uncontradicted with reference to the original construction of the defendants' houses. The whole of the case upon this subject is altogether unsatisfactory, and was evidently not determined with reference to the effect of the changed conditions of the covenant, but substantially as if the modification of the covenant had made no alteration in the rights or obligations of any of the parties, and as if the interdiction of building a tenement house still remained, as applicable to any kind of tenement house that could be called a flat or apartment house. We think the proper interpretation of the change in the covenant is as we have stated, and that the subject of the construction of the defendants' houses, relatively to their correspondence with the houses, or either of them, in Forty-Seventh street, presents the material issue in the case, and upon which it should have been decided, and that, if it shall be found that when the buildings were constructed they were in substantial correspondence with either of the houses in Forty-Seventh street, there is no actionable breach of the covenant, but that if they were inferior, or not equal in class, as that word may be defined, to either of the Forty-Seventh street houses, there is an actionable breach of the covenant.

The case was not decided on that question, and therefore we are of the opinion that the judgment should be reversed and a new trial ordered, with costs of the action to the appellants to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concur. WILLIAMS, J., dissents.

INGRAHAM, J. I concur in the reversal of this judgment upon the ground that there is no evidence of an intent of Brown and of the grantees to whom he conveyed the premises subsequently acquired by the defendant that the covenants contained in these deeds were to be for the benefit of the grantees of other portions of Brown's property. This property was conveyed by three deeds to different grantees, one dated April 29, 1869, and the other two May 5, 1869. Each of these three deeds contains the same covenant, by which the grantee, "for himself, his heirs and assigns, covenants, agrees to and with the said party of the first part (Brown), his heirs, executors, administrators, and assigns, that neither he, the said party of the second part [the grantee], nor his heirs or assigns, shall or will at any time thereafter erect, or cause, permit, or suffer to be erected, upon the said premises conveyed, * * * any tenement house"; and it is to enforce this covenant that the plaintiff sues. It is alleged in the complaint that such restrictions and covenants were for the benefit of the whole of said block, and each part and parcel thereof, and for the benefit of each purchaser and

owner claiming or deriving title under or through said conveyances from the said Brown, or either of such conveyances, and was a charge, restriction, and easement against and upon each such lot and parcel; and it is this allegation of the complaint that I think the evidence fails to prove. In the deed containing these restrictions there is no recital as to the ownership of the rest of the block; nor is there any intimation that this covenant was intended to apply to any other property except that conveyed, or was to be for the benefit of any other property which either had been or should subsequently be conveyed by Brown. When these three deeds were executed, as it appears from the evidence, Brown had been the owner of the block of which this property was a part. Some portion of it had been conveyed prior to the time of this conveyance, and some was subsequently conveyed. There is no intimation in the deeds themselves, or in any deed executed prior to or subsequent to the delivery of the deeds in question, that these conveyances were part of the plan by which all of the property owned by Brown was to be benefited, and that similar restrictions were to be inserted in each deed that Brown executed of any portion of the block. Nor does it appear that in any way Brown had bound himself or the property remaining in his hands by any covenant as to the use to which it would be put. If Brown had still retained this property, but had conveyed other portions of the block with similar covenants, it could not, I think, be claimed that Brown's property unconveyed would be restricted because of the covenant contained in deeds of other portions of the block to other grantees. The sole fact upon which the plaintiff assumes to imply such an intention is the fact that, about the time that these three deeds in question were executed, Brown conveyed to other grantees some portions of this block of land, and in several deeds that he then executed he inserted a covenant similar to the ones in the deeds in question; but in none of these deeds, executed either before or after the deeds in question, is there any statement that these covenants were inserted for the benefit of any other than the grantor, "his heirs, executors, administrators, and assigns," nor is the intent expressed that such covenant should be for the benefit of any property other than that embraced in the grant then belonging to the grantee, or property which he had conveyed. Then we have the agreement of February 29, 1884, whereby Rutherford, the plaintiff's grantor, and the executors of Brown, modified the covenant contained in the deed from Brown to the plaintiff's grantor. This, I think, is a practical construction of the intent with which the covenant was made. If the right to enforce this covenant had vested in all of those to whom Brown had granted other pieces of property upon the execution and delivery of his various deeds, then such grantee's right to enforce this covenant against Rutherford existed at the time of the execution of this agreement modifying the covenant, and that modification would have been, as to the other grantees, entirely ineffectual. Both the plaintiff's grantor, Rutherford, and the executors of Brown, by this act of modification, which, as Mr. Justice PATTERSON has shown, seriously modifies the effect of the covenant, necessarily acted upon

the assumption that the covenants in question were personal to Brown, and upon his death passed to his personal representatives. If the plaintiff has the right to enforce this covenant against the defendant, as affecting the property conveyed by Brown to the defendant's grantors, certainly the defendant has the right to enforce the covenant contained in the deed as against the plaintiff, and Brown would have no power to modify it, so far as this plaintiff's interest was affected. It does not appear whether, at the time this agreement was executed, Brown's heirs or devisees held any of the property included within the block, or whether it had been all conveyed, but it is quite apparent that Brown's executors, as executors, could have no interest in any of such real estate; and an agreement modifying the covenant contained in the deed to the plaintiff's grantor would be ineffectual if the covenant was one which the grantee of other pieces of property had a right to enforce, or, in other words, if the covenant was anything other than a personal covenant to Brown for his own benefit. The words in the deed as to the person with whom and for whose benefit the covenant was made would also exclude the grantees of other pieces of property. That covenant is to Brown, his executors, administrators, and assigns. If it was intended that this covenant should be for the benefit of Brown, and for those to whom he granted other pieces of property owned by him, it could not have been for the benefit of his executors or administrators, as they, upon that contingency, could not have been entitled to any interest in this covenant. If, however, the covenant was personal, they would have the right to enforce it. It seems to me clear that from the form of the covenant, and from the absence of any expressed intention to have it benefit any one except Brown himself, and, in the event of a breach by the defendant, the right of Brown's executors, administrators, and assigns to enforce a claim for damages in consequence of the breach, the burden of proof which was upon the plaintiff, to show that it was the intention that such covenant should be for the benefit of the grantees of other portions of Brown's property, was not sustained. The learned judge below relied upon the case of Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741. This question was not presented to the court in that case, nor does it appear that the objection now relied upon was taken. We are unable to tell upon what facts the court in that case based its judgment, but it is quite apparent that the point now presented was neither relied upon by the defendant nor determined by the court. A review of the cases upon this question which have led me to this conclusion I do not think would be useful. While it is somewhat difficult to reconcile them all, it seems to me that the trend of the authorities, both in this country and in England, requires something more to show such intention than the mere fact that a person who is the owner of a piece of land conveys portions of it to a several grantees, and in each conveyance there is a covenant restricting the use of the land granted, when that covenant runs to the grantee, his executors, administrators, and assigns. I think, therefore, there should be a new trial.