WILLIAM NELSON CROMWELL and Others, as Executors, etc., of
   JOSEPH R. DeLAMAR, Deceased, Plaintiffs, *v.* AMERICAN BIBLE
   SOCIETY, Defendant.

First Department, July 14, 1922.

**Vendor and purchaser — specific performance of contract for sale of
realty in New York city denied — contract provided that conveyance
should be subject to restrictions in Murray Hill Restrictive Agreement
and in Building Zone Resolution and that conveyance should be made
only in case such restrictions should not prohibit purchaser from speci-
fied use of premises — resolution no bar to such use — agreement
construed to prohibit such use — restrictive covenant as to erection
of buildings restricts use as well as erection.**

The Building Zone Resolution adopted by the board of estimate and apportionment
   of the city of New York on the 25th day of July, 1916, and the supplements
   and amendments thereto, do not prohibit an eleemosynary corporation whose
   sole business is publishing and promoting a general circulation of the Holy
   Scriptures without note or comment, said corporation being operated without
   profit, from conducting its business in a " residence district " as established by
   such resolution.

However, the Murray Hill Restrictive Agreement, so called, which provides as
   a covenant running with the land, in substance, that no buildings except
   dwelling houses and churches shall be erected in the territory covered by the
   agreement, must be construed to prohibit the alteration and use by such cor-
   poration of a dwelling house in a block in the restricted area for the conduct
   of its business, it appearing that the remainder of the block is occupied by
   houses erected and used in accordance with said resolution and said agreement
   and that all the lands in the block were received through mesne conveyances
   from a common grantor under said restrictive agreement.

Accordingly, the vendors in a contract for the sale to such corporation of a parcel
   of realty in the area covered by said agreement, upon which there is a dwelling
   house, are not entitled to a specific performance, where the contract provides
   that the conveyance shall be subject to the restrictive covenants contained in
   said agreement and to the restrictions contained in said resolution and that
   conveyance shall be made only in case such covenants and restrictions shall
   not prohibit the purchaser from using the premises as its headquarters, office
   and storeroom and from making the necessary interior alterations for such
   use, and shall not render the title to the premises unmarketable by such use and
   the making of such alterations.

*It seems,* that a restrictive covenant against the erection of any building other
   than a dwelling house restricts use as well as construction and that the restriction
   as to use is the more important.

SUBMISSION of a controversy upon an agreed statement of facts
pursuant to section 546 of the Civil Practice Act.

*Sullivan & Cromwell [Miner W. Tuttle* of counsel], for the
plaintiffs.

40

*Davies, Auerbach & Cornell* [*Joseph S. Auerbach* of counsel; *Henry A. Ingraham* and *Martin A. Schenck* with him on the brief], for the defendant.

*Carter, Ledyard & Milburn,* for the Murray Hill Association, Incorporated, as *amicus curiæ.*

LAUGHLIN, J.:

The point presented for decision by the submission is whether the plaintiffs are entitled to the specific performance of a contract in writing made by the parties on the 1st day of May, 1922, for the conveyance by the plaintiffs and the purchase by the defendant of premises in the borough of Manhattan, county of New York, situated at the northeasterly corner of Thirty-seventh street and Madison avenue, having a frontage of 49 feet on the avenue and extending in depth therefrom at right angles 100 feet, upon which there had been erected and then was a dwelling house. The contract provided that the premises were to be conveyed subject, among other things, to the restrictive covenants contained in the Murray Hill restrictive agreement, so called, which was duly recorded, and also to the restrictions and limitations contained in the building zone resolution, adopted by the board of estimate and apportionment of the city of New York on the 25th day of July, 1916, and the supplements and amendments thereto, with a proviso as follows: " provided such restrictive covenants and Building Zone Resolution and the supplements and amendments thereto do not prohibit nor restrain the American Bible Society from using said premises as its headquarters, office, storeroom, and place of receiving, sending out and disposing of Bibles and Testaments, and from making such interior alterations as may be necessary or proper for such use; and provided also that such covenants, resolution and supplements and amendments thereto are not such that the title to said premises will be rendered unmarketable by such use of the property and the making of such alterations." The points of law arising on the submission are whether the uses which the defendant intends to make of the premises, as stated in the proviso hereinbefore quoted, and the alterations therein described which it contemplates making, would constitute a violation of the restrictive covenants or of the building zone resolution as supplemented and amended, and render the title unmarketable for such uses. We have been materially aided by the points submitted by counsel for the Murray Hill Association, Incorporated, in which some authorities quite in point and not otherwise drawn to our attention are cited.

The Court of Appeals in *Reformed P. D. Church* v. *Madison Avenue Bldg. Co.* (214 N. Y. 268, affg. *sub nom. South Church* v.

*Madison Avenue Bldg. Co., Inc.,* 163 App. Div. 359) evidently attempted to settle a point, which had theretofore presented considerable difficulty, by holding that where an action for specific performance of a contract to purchase real estate presents questions of law only, they should be decided, even though not free from a doubt, and a decree for specific performance granted, although the purchaser might be subjected to litigation by parties not bound by the decision; and that the only protection to which he is entitled will be afforded by the doctrine of *stare decisis.* Of course, if the purchaser resists specific performance until the Court of Appeals declares the title is good, the doctrine of *stare decisis* will afford him *reasonable* protection; but that doctrine only applies to courts of co-ordinate jurisdiction, and a decision of an intermediate court would afford the purchaser no protection against an adverse ruling by a higher court.

The submission shows that the plaintiffs, as executors of the last will and testament of Joseph R. DeLamar, deceased, are the owners of the premises, and that the dwelling house erected thereon is vacant; that the defendant is a corporation duly organized and existing under and by virtue of a special charter granted by the Legislature of the State of New York by chapter 68 of the Laws of 1841 " for the purpose of publishing and promoting a general circulation of the Holy Scriptures, without note or comment; " that on the 10th day of May, 1922, the time prescribed by the contract for closing the title, the parties met and the plaintiffs tendered a conveyance of the premises duly executed, and the defendant rejected the title as rendered unmarketable by the use and alterations intended to be made by the defendant as recited in the contract, in that such use and alterations are prohibited by the Murray Hill restrictive agreement and the building zone resolution as supplemented and amended; that the remaining land in the same block is occupied by houses erected and used in accordance with the building zone resolution and said restrictive covenants; and that the plaintiff's premises and the other lands in the block were received through mesne conveyances from a common grantor under said restrictive agreement. Copies of the contract and of the Murray Hill restrictive agreement, so called, of February 22, 1847, made between the property owners, are annexed to the submission and it is left to the court to take judicial notice of the building zone resolution and supplements and amendments.

It is conceded that the defendant is a philanthropic or eleemosynary institution, that all of its income is devoted to the worthy object for which it was founded, and that it was not organized and is not operated for profit. The premises in question are located in a

"residence district" described in the building zone resolution which, in describing "use districts," provides in section 2 of article 2 that "No building or premises shall be erected or used for any purpose other than a purpose permitted in the use district in which such building or premises is located." The provisions of the building zone resolution with respect to the use of premises in "residence districts" are contained in article 2, section 3, and are as follows:

"§ 3. Residence districts — In a residence district no building shall be erected other than a building, with its usual accessories, arranged, intended or designed exclusively for one or more of the following specified uses:

"(1) Dwellings, which shall include dwellings for one or more families and boarding houses and also hotels which have thirty or more sleeping rooms.

"(2) Clubs, excepting clubs the chief activity of which is a service customarily carried on as a business.

"(3) Churches.

"(4) Schools, libraries or public museums.

"(5) Philanthropic or eleemosynary uses or institutions, other than correctional institutions.

"(6) Hospitals and sanitariums.

"(7) Railroad passenger stations.

"(8) Farming, truck gardening, nurseries or greenhouses.

"In a residence district no building or premises shall be used for any use other than a use above specified for which buildings may be erected and for the accessory uses customarily incident thereto. The term accessory use shall not include a business nor shall it include any building or use not located on the same lot with the building or use to which it is accessory. A private garage for more than five motor vehicles shall not be deemed an accessory use." (See Minutes Bd. Est. & Apport. of City of New York, 1916, vol. 5, p. 4244; Cosby's Code of Ordinances [Anno. 1922], p. 583.)

Since the defendant is limited by its charter to publishing and promoting a general circulation of the Holy Scriptures without note or comment, and its functions have been and are strictly confined thereto, it seems quite clear that the building zone resolution does not prohibit it from conducting its business in a "residence district." Counsel for the defendant does not contend that the contemplated alterations and use of the dwelling would be in violation of the building zone resolution. He merely submits the point for decision on the ground that the defendant cannot afford to take any risk or to have its trust funds dissipated in litigation. His main contention is that the contemplated alterations and use of the dwelling are prohibited by said restrictive agreement, which

stands unimpaired by the building zone resolution for the reason that it is expressly provided in section 19 thereof, which is in article 5, that it is not intended to interfere with or to abrogate or annul any covenant. (See Minutes Bd. Est. & Apport. of City of New York, 1916, vol. 5, p. 4250; Cosby's Code of Ordinances [Anno. 1922], p. 593.)

It is recited in the Murray Hill restrictive agreement that the parties thereto are the owners " of divers lots and parcels of ground situate in the 18th Ward of the City of New York, lying on each side of 34, 35, 36, and 37th Streets and on the South side of 39th Street, lying between Madison Avenue on the westerly side and Lexington Avenue on the Easterly and also on said Madison Avenue, Lexington Avenue and 4th Avenue as the same are particularly laid down on a map in the Office of the Register in and for the City & County of New York, entitled Map of the Murray Hill Estate, made by Joseph T. Bridges, City Surveyor, Feby. 25, 1839," and it provides that the several parties, in consideration of the covenant and agreement on the part of the others and of one dollar, " have covenanted, bargained, and agreed and each of them by these presents doth covenant, bargain and agree with the others and with each of the others and each for himself, his heirs and assigns with the others, their heirs and assigns, and with each of the others, his heirs and assigns, that neither of them nor his heirs and assigns shall or will at any time hereafter erect or cause to be erected upon any of the lots owned by them respectively or any part of the same any building or erection other than brick or stone dwelling houses of at least two stories in height, and with the ordinary yard appurtenances to dwelling houses and except churches and stables of brick or stone for private dwelling and further that they will not hereafter erect or permit upon such lots or any part of the same any livery stable, slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail or other iron factory or any manufactory of gun powder, glue, varnish, vitriol, ink or turpentine or for the tanning, dressing or preparing skins, hides or leather or any brewery, distillery, museum, theatre, circus, place for the exhibition of wild animals or any other erections known as nuisances in the law, and it is further agreed and covenanted that the above covenants shall be deemed and taken to be covenants running with the land. And that in case of any violation or attempted violation of the covenants herein contained by any of the parties hereto, his, her or their heirs, executors or assigns, a bill may be filed by any one or more of the other parties hereto, their or his heirs, executors or assigns to obtain a perpetual injunction against the same."

The dwelling house on the premises was erected in strict con-

formity with this covenant, and it has been used only as a private dwelling house. The contemplated alterations and use thereof would not bring it within the general prohibitions of the second part of the covenant relating to the erection, or to permitting to be erected on the premises, livery stables and certain similar specified buildings, the designation of which involves use as well as construction, other than dwelling houses and stables for use in connection with private dwellings and churches. It is quite clear, therefore, that unless the first part of this covenant relates to the use as well as to the erection of buildings, the contemplated alterations and use of this dwelling house would not violate the covenant. As I view it, the decision of the submission depends upon whether the first part of the covenant is to be construed as relating *merely* to the erection of the buildings, for, if so, it has been complied with, or whether it should be construed as prohibiting their use after erection for any purpose other than that for which their erection is permitted, and if so, the contemplated alterations and use would be prohibited and the defendant would be entitled to judgment, because the plaintiffs contracted to convey a title which would be marketable for the purpose for which the defendant intends to use the building and premises. It is to be borne in mind that this covenant is neither confined to the first buildings erected on the premises nor is it limited as to time; it was intended to regulate the character of the buildings in the restricted district for all time.

It has been held that premises subject to a covenant with respect to use, and limiting the use to dwelling house purposes, "may be also used as a place for carrying on some kinds of business provided such business is of such character as to be no inconvenience to neighboring property holders" (*Smith* v. *Graham,* 161 App. Div. 803; affd., on App. Div. opinion, 217 N. Y. 655); but in a later case the Court of Appeals held that a restrictive covenant to erect "a first-class building, adapted for and which shall be used only as a private residence for one family" ran with the land and was intended for the benefit of successive owners of the lots in the tract of land so restricted, and that an attempt to use a building originally erected in conformity with the restriction for the residence and office of a physician and as a maternity hospital without exterior change or indication other than a small sign with the name of the doctor, was in violation of the covenant and should be enjoined. (*Booth* v. *Knipe,* 225 N. Y. 390.) In *Clark* v. *Jammes* (87 Hun, 215) it was held that such covenants should be most strictly construed against the grantor; and that a covenant to the same effect as that now under consideration, between owners of adjacent lands, that they shall not or will not " at any time hereafter erect on any of the

lots or lot owned by them respectively, any building except brick or stone dwelling houses of at least two stories in height, and except buildings of brick or stone for private stables," did not prohibit the use in part for a dressmaking establishment of a dwelling house erected in conformity with the restriction; and that the requirement of the restriction was fulfilled by the character of the building; and that any occupation which left it of the general character of a private dwelling house did not violate the restriction; and that this construction was accentuated by the subsequent provisions of the restriction, which, as in the case at bar, related both *to erecting* and *to permitting* certain specified buildings on the premises. That decision must be deemed overruled by *Booth* v. *Knipe* (*supra*) in so far as it is inconsistent therewith, but we are not called upon to decide what degree of departure from the prescribed use, if it be prescribed, would constitute a violation of the covenant, for the submission shows that the defendant contemplates wholly abandoning the use of the building as a dwelling house, and intends using it exclusively for business purposes.

The courts have construed the Murray Hill restrictive agreement on many occasions. The general rule that such covenants are to be construed strictly against the grantor and in favor of the grantee has been recognized as applicable thereto, but it has been held or an opinion expressed, although in some instances it was obiter, that the property owners intended by the agreement to restrict the *use* of the premises for the reason that use was necessarily involved in the designation of the character of the buildings affected thereby as dwelling houses, and to maintain the residential character of the restricted district; and that such intent was controlling; but that it did not prohibit the erection of apartment houses or the alteration of a dwelling into an apartment house. (*Reformed P. D. Church* v. *Madison Avenue Bldg. Co., supra; Goodhue* v. *Cameron,* 142 App. Div. 470, Presiding Justice INGRAHAM's concurring opinion at p. 486; *Irving* v. *Huntington,* opinion by DAVID LEVENTRITT as referee, in 1911, after leaving the bench, but not reported; *Schoonmaker* v. *Heckscher,* 171 App. Div. 148; affd., 218 N. Y. 722. See, also, *Barnett* v. *Vaughan Institute,* 134 App. Div. 921; affd., 197 N. Y. 541; *Sonn* v. *Heilberg,* 38 App. Div. 515; *Levy* v. *Schreyer,* 177 N. Y. 293; *Kitching* v. *Brown,* 180 id. 427; *Longworth* v. *Deane,* 15 App. Div. 463; *Goodhue* v. *Pennell,* 164 id. 821; *Clark* v. *Jammes, supra; Reed* v. *Sobel,* 177 App. Div. 532; *Baumert* v. *Malkin,* 178 id. 913; *Hutchinson* v. *Ulrich,* 145 Ill. 336; *Parker* v. *Nightingale,* 6 Allen [Mass.], 341.) Plaintiffs also rely on *Kurtz* v. *Potter* (44 App. Div. 263; affd., without opinion, 167 N. Y. 586), wherein the Appellate Division, after deciding that the

owner of the lot did not authorize the execution by her husband of the agreement containing the restrictive covenant, expressed the opinion that the restriction, which provided that the first buildings erected on the land within twenty years " shall be private dwellings * * * adapted for the residence of private families or buildings for churches," only related to the first building erected on the premises, and that, after a building was erected in compliance with the covenant, the owner might use it " in any way he pleased " or remove it and erect a building that could be used for any purpose. With respect to a similar restriction as to the first building to be erected the court in *Hurley* v. *Brown* (44 App. Div. 480) stated as one of the grounds of the decision that the building, after having been erected in accordance with the restrictive covenant, might have been altered or torn down and a new building, unaffected by the covenant, erected. A like construction was given to a restrictive covenant in *Reed* v. *Sobel* (*supra*). In the case at bar the covenant was not limited to the first building on the premises. In *Sonn* v. *Heilberg* (38 App. Div. 515) it was held that a covenant not to erect " any building * * * less than three stories in height, and the same to be in every way adapted for use as a family residence," and not to erect or permit to be erected buildings in which other enumerated classes of business should be carried on, was not violated by the erection of a six-story apartment house designed for the use of several families, because the object of the covenant was to restrict the use of the premises to residential purposes and to prohibit their use for business purposes, and, therefore, it did not prohibit the erection of houses to be occupied by more than one family, for that would be a residential use. In *Tonnelle* v. *Hayes* (118 Misc. Rep. 339) the Special Term, following *Clark* v. *Jammes* (*supra*), refused to enjoin the use for the purpose of a vocal studio of *part* of a private dwelling subject to the Murray Hill covenant.

In *Amerman* v. *Deane* (132 N. Y. 355) the court construed a covenant, which it was agreed was to run with the land, that a grantee would not " at any time thereafter, erect, suffer or permit upon the premises thereby conveyed, or any part thereof, any tenement house," as forbidding *use*, on the ground that both construction for and such use must concur to constitute a building a tenement house within the intent of the parties to the covenant. This court in *Longworth* v. *Deane* (15 App. Div. 461), in commenting on that decision of the Court of Appeals, construed it as holding that the covenant was essentially one against use. In *Barnett* v. *Vaughan Institute* (134 App. Div. 921) the court affirmed a judgment in favor of the plaintiff on the opinion of the Special Term, which is reported in 119 New York Supplement, 45, and the Court of Appeals affirmed

without opinion (197 N. Y. 541). In that case the trial court construed a covenant " that the buildings erected upon the above-described premises shall be first-class private houses and shall stand back at least 20 feet from the street line of Park Place," which it was provided should run with the land and continue until the 1st of December, 1912, as likewise restricting the *use* of the buildings when erected. I am of opinion that the covenant in that case is not materially different from the one now before the court. Although there, as here, there was no express provision in the covenant with respect to the *use* of the private houses after their erection, notwithstanding the general rule of strict construction against the grantor, which was recognized as applicable, the courts, in affirming the decision, necessarily held that the restriction plainly required not only that the buildings to be erected should be first-class private houses, but that they should so remain. In a well-considered opinion, the Hon. DAVID LEVENTRITT, after resigning from the Supreme Court, as referee, in *Irving* v. *Huntington (supra)* construed the first part of this covenant with respect to the erection of dwelling houses as restricting their use to dwelling house purposes. That, I think, is the proper construction of the covenant, for otherwise a building, after having been erected as a dwelling house in conformity with the restriction, could be used for any purpose not prohibited by the subsequent general prohibitions relating to uses which may be described generally as nuisances, if no structural change in the building was made; and in that manner the object of the restrictions, which plainly was to maintain the Murray Hill district as a high-class residential district for all time, would be frustrated. The first inquiry in construing a contract is what did the parties thereto intend, and if their intent is sufficiently shown by the language employed, it is the duty of the court so to declare and to enforce the contract. The rule of strict construction only obtains when it is doubtful or the parties have failed to express their meaning with sufficient definiteness to enable the court to say that its construction is perfectly plain. In the latter class of cases, the rule of strict construction often comes into play and becomes controlling. In this case, however, there is no occasion for having recourse to that rule, for there is no room for doubt with respect to what the parties intended and endeavored to secure by the restrictive agreement. It is perfectly plain that the primary purpose was to maintain the premises, to which the agreement related, for all future time as a residential district. Moreover, aside from use, a building may be a private dwelling house in appearance but not in fact. Ordinarily, I think, a restrictive covenant against the erection of any building other than a private

dwelling or a dwelling house restricts use as well as construction, and the restriction as to use is the more important; but in any event I deem it clear that the restrictive agreement in question would be violated by abandoning the use of the building as a dwelling and converting it to business uses as contemplated.

I am of opinion, therefore, that the defendant should have judgment on the submission, dismissing the controversy on the merits, and for the return of its down payment of $5,000, but without costs.

CLARKE, P. J., DOWLING, SMITH and PAGE, JJ., concur.

Judgment ordered for defendant as stated in opinion, without costs. Settle order on notice.