## SENEFSKY v. CITY OF HUNTINGTON WOODS.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—POLICE POWER.
   The reasonableness of the exercise of police power under a municipal zoning ordinance is always subject to judicial review.

2. SAME—REASONABLENESS OF ZONING ORDINANCE.
   In determining the reasonableness of a zoning ordinance, each case must be determined upon its own facts.

3. SAME—ZONING ORDINANCE—RESIDENCES—FLOOR SPACE.
   Provision of zoning ordinance specifying that all residences erected within a given zone should contain 1,300 square feet of usable floor area *held*, an unreasonable and an unjust limitation of a reasonable and lawful use of property of applicant for building permit where over 27 per cent. of the residences already erected did not comply with such restriction although some of them were erected since its imposition, and where applicant's plans calling for only 980 feet of usable floor space otherwise complied with pertinent restrictions.

4. SAME—ZONING ORDINANCE—PUBLIC WELFARE.
   In determining validity of municipal zoning ordinance as applied to a particular parcel of property, the court must consider whether the zoning of such parcel advances the public health, safety, and general welfare of the people.

5. SAME—ZONING ORDINANCES—PRESERVATION OF VALUE.
   The preservation or enhancing of the value of other property in a given zone may be an incident but cannot be the moving factor in zoning ordinances enacted under the police power.

6. MANDAMUS—BUILDING PERMIT—MINIMUM FLOOR SPACE—POLICE POWER—PRIVATE PROPERTY RIGHTS.
   Applicant for building permit in subdivision which had been zoned after the erection of many houses therein that did not comply with the requirement as to minimum floor area was entitled to writ of mandamus compelling issuance of

building permit notwithstanding his plans failed to comply with such requirement since his property rights should not be divested under the authority of the municipality's police power, unless by so doing the public health, safety or welfare would be subserved.

BUTZEL and BUSHNELL, JJ., dissenting.

Appeal from Oakland; Holland (H. Russel), J. Submitted October 12, 1943. (Calendar No. 42,472.) Decided December 29, 1943.

Petition by Joseph J. Senefsky for a writ of mandamus to compel William A. Lawler, superintendent of public works of the city of Huntington Woods, and city of Huntington Woods to issue a building permit. Petition dismissed. Plaintiff appeals. Reversed and writ of mandamus issued.

*Bethune D. Blain,* for plaintiff.

*Arthur E. Moore,* for defendant.

BUSHNELL, J. (*dissenting*). The first question to be considered in this appeal is whether the powers granted to cities and villages under Act No. 207, Pub. Acts 1921, as amended, 1 Comp. Laws 1929, § 2633 *et seq.* (Stat. Ann. § 5.2931 *et seq.*), entitled:

"An act to provide for the establishment in cities and villages of districts or zones within which the use of land and structures, the height, the area, the size and location of buildings may be regulated by ordinance, and within which districts regulations shall be established for the light and ventilation of such buildings, and within which districts or zones the density of population may be regulated by ordinance; to provide for the administering of

this act; to provide for amendments, supplements or changes hereto; to provide for conflict with the State housing code or other acts, ordinances or regulations; to provide penalties for the violation of the terms hereof and to give immediate effect hereto,"

includes the power to impose, by ordinance, restrictions which regulate the height and size of dwelling houses by specifying minimum floor areas. Section 2 of the act reads in part:

"The legislative body of cities and villages may regulate and limit the height and bulk of buildings hereafter erected, and regulate and determine the area of yards, courts, and other open spaces, and for such purposes divide any city or village into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this section."

This section concludes with the statement that such regulations for the promotion of the public health, safety and general welfare are to be made "with reasonable consideration, among other things to the character of the district, its peculiar suitability for particular uses, the *conservation of property values and the general trend* and character of building and population development." (Italics ours.)

Plaintiff Joseph J. Senefsky is the contract purchaser of a lot in Bronx subdivision of the city of Huntington Woods. In 1941 he made application to the superintendent of public works of the city for a building permit to construct a residence on his lot, in accordance with plans which provided for a usable floor area of 980 square feet at an estimated cost of $6,200.

Defendant city has a zoning ordinance which, among other provisions, contained therein, requires that:

"All dwelling houses hereafter erected or altered in this zone shall provide for each family not less than 1,300 square feet of usable floor area of which not less than 900 square feet of such usable floor area shall be finished prior to occupancy."

Because of this ordinance, plaintiff was refused a building permit, his plans failing to show 1,300 square feet of usable floor area as defined therein. Plaintiff seasonably filed a petition for writ of mandamus in the circuit court, in which he alleged that the provision of the ordinance requiring a minimum of 1,300 square feet of usable floor area was an unwarranted exercise of the police power, was unreasonable, arbitrary and discriminatory, and that the ordinance was not based "upon a plan fairly designed to accomplish the statutory purposes of public health, safety and general welfare.

Based on the 1940 census the city of Huntington Woods has a present estimated population of 2,400. The subdivision in question contains 1,100 individual residential and business lots. At the present time there are 378 houses in this subdivision, with 465 of the lots remaining for residential purposes. Of the houses erected in this subdivision, before the ordinance was enacted, 70.4 per cent. of the houses are over or within 100 square feet of the minimum area requirement. Of the 172 houses built subsequent to the passage of the zoning ordinance, 150 have more than the required minimum floor area and 14 are within 25 square feet of that area. Thus, at the present time 83.3 per cent. of all the houses in the subdivision are over or within 100 square feet of the minimum requirement of the ordinance.

The trial judge held that the minimum area requirement was reasonable and proper, and he found as a matter of fact that there was a direct relationship between usable floor space and public health, and that the ordinance followed the legislative criterion hereinbefore quoted. The trial judge said in part that—

"to place a lesser floor space restriction on houses in the city of Huntington Woods, which in turn would mean the building of smaller homes in said subdivision within said city, would amount to a total disregard:

"a. To the character of the district;

"b. Its peculiar suitability for particular uses;

"c. The conservation of property values;

"d. And the general trend and character of building and population development in the community involved."

Plaintiff argues that the language of the zoning statute which empowers cities and villages to "regulate and limit the height and bulk of buildings hereafter erected" was not an authorization by the State legislature to the legislative bodies of cities and villages enabling the latter to specify minimum floor areas. He quotes from *Brown* v. *Board of Appeals of City of Springfield,* 327 Ill. 644 (159 N. E. 225, 56 A. L. R. 242), where the court said that the word " 'limit' * * * must be construed to mean 'abridge, confine and restrict,' and when used in connection with the word 'height,' it seems clear that the only power given by the statute to the city council is that of fixing a height above which a building shall not be erected. * * * We are of the opinion that the words 'regulate' and 'limit' cannot be construed as power to compel the erection of a building of any specified height."

Though the title to an act is not a part thereof, it may be resorted to for the purpose of interpreting the act in doubtful cases; and the words therein are not generally construed in a technical sense, but as having been used in their ordinary meaning. *People* v. *Powell,* 280 Mich. 699, 703 (111 A. L. R. 721).

The title of Act No. 207, Pub. Acts 1921, as amended, 1 Comp. Laws 1929, § 2633 *et seq.* (Stat. Ann. § 5.2931 *et seq.*), provides in part that the "size * * * of buildings may be regulated by ordinance." There is no ambiguity in this language. Under the term "regulate," very broad powers may be exercised. *Westgate* v. *Township of Adrian,* 161 Mich. 333. The power to regulate size necessarily implies authority to fix a minimum as well as a maximum. The power to regulate may, in proper cases, take the character of prohibition. *United States* v. *Hill,* 248 U. S. 420, 425 (39 Sup. Ct. 143, 63 L. Ed. 337). See, also, *Cronin* v. *People,* 82 N. Y. 318 (37 Am. Rep. 564).

Plaintiff further contends that the ordinance as applied to the facts in the instant case is both arbitrary and unreasonable.

This question of minimum floor area is one of first impression in this State. At the outset, we are confronted with the elementary propositions that every intendment is in favor of the constitutionality of an ordinance and that the plaintiff must bear the burden of showing that the one in question has no real or substantial relation to public health, morals, safety or general welfare. As stated in *Austin* v. *Older,* 283 Mich. 667, 674:

"Zoning ordinances are constitutional in principle as a valid exercise of the police power. * * * Furthermore, the power to zone is not limited to a

protection of the *status quo,* and the city may validly plan its future development."

See, also, authorities therein cited.

Under settled rule of construction, zoning ordinances must be sustained if their reasonableness is debatable. *Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365 (47 Sup. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016). Our court said in *Cady* v. *City of Detroit,* 289 Mich. 499, 514:

"Ordinances having for their purpose regulated municipal development, the security of home life, the preservation of a favorable environment in which to rear children, the protection of morals and health, the safeguarding of the economic structure upon which the public good depends, the stabilization of the use and value of property, the attraction of a desirable citizenship and fostering its permanency are within the proper ambit of the police power. Changes in such regulations must be sought through the ballot or the legislative branch."

The legislative authorities in the city of Huntington Woods are better acquainted with the necessities of their city than we are. They are also better able to determine whether the ordinance in question will accomplish the desired result of stabilizing and preserving property values. A clear and comprehensive statement of these propositions may be found in *West Brothers Brick Co.* v. *City of Alexandria,* 169 Va. 271 (192 S. E. 881).

Each zoning case stands by itself and the reasonableness of the zoning must be judged by the circumstances of the case. But in the last analysis, we must consider whether the particular provision of the zoning law advances the public health, safety, and general welfare of the people. *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31.

Testimony was produced indicating that the erection of dwelling houses with only 900 square feet of usable floor area was permitted in certain instances provided the owner would add an additional 400 square feet of nonusable space as an attic. It is apparent that the city in effect required the erection of dwellings within certain limitations of value without using a money value standard. One of the city's witnesses, who qualified as a zoning expert, testified in substance that the ordinance in question was designed to stabilize property values and protect the investments of the home owners of the community.

Zoning restrictions are a fairly new development in the theory of governmental regulation, and yet no one would seriously dispute today the power of government to impose restrictions upon the use of property in the promotion of public welfare, convenience, and general prosperity any more than they would have formerly disputed the power to impose such restrictions in the interest of the public health, morals and safety.

In the *Cady Case, supra,* this theory was developed and the court quoted extensively from statements along this line in *State, ex rel. Carter,* v. *Harper,* 182 Wis. 148 (196 N. W. 451, 33 A. L. R. 269), and adopted the following from *Noble State Bank* v. *Haskell,* 219 U. S. 104, 111 (31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. [N. S.] 1062, Ann. Cas. 1912 A, 487).

" 'It may be said in a general way that the police power extends to all the great public needs.   *   *   *   It may be put forth in aid in what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.' "

It is the purpose of the ordinance to stabilize and conserve property values, and this purpose is within the ambit of the police power. *Cady* v. *City of Detroit, supra.* The sizes of the houses already erected in the subdivision in question are part of the circumstances of the case and furnish some basis for the test of reasonableness. See *Pere Marquette R. Co.* v. *Muskegon Township Board, supra.*

We cannot say that the requirement of 1,300 square feet of usable floor space is clearly unreasonable, because, under the circumstances, it is at least a debatable question. Whether or not the means adopted by defendant city will accomplish the desired end is also debatable. That being the case, we cannot substitute our judgment for that of the legislative body which is charged with the responsibility of deciding that question. *Village of Euclid* v. *Ambler Realty Co., supra.*

The order dismissing the petition for a writ of mandamus should be affirmed, with costs to appellee.

Butzel, J., concurred with Bushnell, J.

North, J. This is an appeal in the nature of certiorari from denial in the circuit court of Oakland county of the relief sought by mandamus. Mr. Justice Bushnell has written for affirmance. For the reasons herein noted I do not concur.

The facts and circumstances giving rise to this litigation fairly appear in my Brother's opinion. In his appeal plaintiff asserts that under the circumstances of this case the provision in the amended zoning ordinance which "prohibits the erection of houses having less than 1,300 square feet of usable floor area" is unreasonable. The precise issue is whether defendants' denial of plaintiff's application for a building permit made July 22, 1941, was, under

the circumstances of this case, an unreasonable exercise of police power. Consideration of this question alone affords a basis of decision of this appeal.

The reasonableness of the exercise of police power herein sought to be enforced is always subject to judicial review. The determination as to reasonableness must be made in the light of the facts presented in each case. "Each zoning case must be determined upon its own facts and circumstances." *Moreland* v. *Armstrong,* 297 Mich. 32, 36.

In passing the zoning ordinance of defendant city the municipality's area was divided into various zones. One of these zones embodies the so-called Bronx subdivision in which plaintiff's property is located. In this subdivision there are 465 vacant lots restricted to residential use, and 378 lots which are occupied by residences. Over 130 of such residences do not comply with the minimum requirement of 1,300 square feet of usable floor area. Some of such noncomplying dwellings were erected prior to the effective date of the amended ordinance, April 11, 1940; but the record discloses that approximately 10 per cent. of the houses erected in this subdivision since the ordinance became effective do not comply with the required minimum usable floor area specified in the ordinance.

While they are not parties to this suit, it appears from the record that others who have been active in the prosecution of this suit "own a large number of lots in this subdivision." In other words the question of the reasonableness or unreasonableness of enforcing the ordinance provision must be considered, among other things, in the light of the fact that a very substantial portion of the dwellings already erected on lots in the subdivision do not comply with the ordinance provision; and that there is a large number of vacant lots in this subdivision, the

use of which is very materially restricted by the noted amended ordinance provision. The record contains uncontradicted testimony that "there were a lot of people who wanted to build smaller houses and they couldn't build them after the ordinance was enacted."

The dwelling plaintiff proposed to erect contained 980 square feet of usable floor area, and in every other respect it complied with building restrictions applicable to this subdivision. In the record it appears and it is stressed in plaintiff's brief that with his proposed area of 980 square feet of floor space a dwelling can be erected which in every respect is in as full accord with the requirements of public safety, public health or public welfare as a dwelling containing 1,300 square feet of such area. For example, a house containing 980 square feet of usable floor area could be designed in the following manner:

| | | |
|---|---|---|
| Living room | 14 x 18 | 252 sq. feet floor area |
| Dining room | 10 x 14 | 140 sq. feet floor area |
| Kitchen | 8 x 10 | 80 sq. feet floor area |
| Two bedrooms, each | 10 x 16 | 320 sq. feet floor area |
| | Total | 792 sq. feet floor area |

The above allocation of floor area would leave in plaintiff's proposed 980 square feet a balance of 188 square feet of floor area for miscellaneous use in closets, toilets or enlargement of any of the rooms above suggested. A multiplicity of like designs might be suggested; but from the above it is obvious that a home can be constructed which is adequate in every sense in so far as requirements can be made under the guise of exercising police power. The restriction in this ordinance as applied to the situation presented by this record in no way promotes or protects in this subdivision public health, safety, morals or welfare. Its application to plaintiff's property is not only unreasonable but is also an un-

just limitation of a reasonable and lawful use of his property. For that reason we should hold in the instant case as we held in the recent decision of *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31, wherein the syllabi read:

"In determining validity of township zoning ordinance as applied to particular parcel of property, the court must consider whether the zoning of such parcel advances the public health, safety, and general welfare of the people.

"Each zoning case, as a rule, stands by itself and its reasonableness must be judged by the circumstances in each particular case."

Notwithstanding Mr. Justice BUSHNELL cites the above-quoted case and says: "But in the last analysis, we must consider whether the particular provision of the zoning law advances the public health, safety, and general welfare of the people," it seems clear that both he and the trial judge in the main would deny plaintiff relief on the ground that enforcing the ordinance provision would tend to enhance the value of other properties in this subdivision. My Brother quotes from *Cady* v. *City of Detroit,* 289 Mich. 499, wherein the opinion signed by the majority of the court in part states:

"Ordinances having for their purpose    *    *    *    the stabilization of the use and value of property    *    *    *    are within the proper ambit of the police power."

If isolated the quoted statement affords some justification for my Brother's conclusion that the instant case should be affirmed on the ground that compliance with the ordinance will enhance or stabilize values. But quite obviously the quoted statement should be read and construed in connection with the facts in the case in which it appears. And it should be noted that it was not essential to de-

cision in that case, other grounds in justification of police power regulations being apparent. Further, it may be seriously questioned if in the *Cady Case* we did not overstate the legitimate scope of police power.

A more accurate statement of the law in this particular is found in *Brookdale Homes, Inc.,* v. *Johnson,* 123 N. J. Law, 602 (10 Atl. [2d] 477), wherein it is held that it is requisite to the validity of a zoning ordinance that the restrictions thereby imposed tend in some degree at least to promote public health, public morals, public safety or public welfare. We quote the syllabi:

"While the legislature has given municipalities the right to pass ordinances to regulate and restrict the height, number of stories and sizes of building, such ordinances to be valid must be designed to promote public health, safety, and general welfare, and do not carry with them the right arbitrarily or capriciously to deprive a person of the legitimate use of his property.

"No person under the zoning power can legally be deprived of his right to build a house on his land merely because the cost of that house is less than the cost of his neighbor's house."

In the instant case plaintiff called for cross-examination under the statute * Arthur H. Roberts who stated that his "official capacity in Huntington Woods is finance commissioner." In part he testified:

"I recall the ordinance which was passed upon by the commission. I think I was sponsor of it. * * * The moving consideration then for passing this ordinance with 1,300 square feet is to protect the people who live there, who had homes there, *those*

---

* See 3 Comp. Laws 1929, § 14220 (Stat. Ann. § 27.915).—RE-PORTER.

*that had already built there, wanted to protect their investment."*

From this record it is difficult, if not impossible, to find any other justification for defendants' attempt to enforce this ordinance against plaintiff than a desire to enhance or protect the value of other improved property in the subdivision. In the prevailing opinion in *Wolverine Sign Works* v. *City of Bloomfield Hills,* 279 Mich. 205, it is said: "Aesthetics may be an incident but cannot be the moving factor" in enforcing police power restrictions. Likewise it may be said that preservation or enhancing the value of other property in a given zone "may be an incident but cannot be the moving factor."

The underlying principles supporting our conclusion herein are aptly stated in 3 (1943 Rev.) McQuillin's Municipal Corporations (2d Ed.), pp. 504, 505:

"In recent times there is a disposition greater than ever before to use the police power to secure objects strongly desired by the public or an aggressive minority thereof. This attitude of mind restricts personal liberty and property rights and assumes that a public desire, when strong and persistent, is the equivalent of a real, vital and compelling public need. There is great danger involved in overlooking the constitutional guaranties and neglecting to give them full force and effect as designed. These guaranties, the result of years of struggle and sacrifice, have been made the very heart of our governmental process. Though the exercise of the police power in its very nature, as the power to govern, includes an indefinite and indefinable element of public welfare which the legislatures may in the first instance determine, subject to adjudication by the courts, which have shown in late years an increasing disposition to sustain, it must be remembered that this essential power has its

limitations. Experience has demonstrated the wisdom of placing restrictions upon 'the use of the police power and eminent domain that those charged with the conduct of public affairs may not, in disregard of the rights of the individual, render the government despotic.   *   *   *   Constitutional inhibitions must not be set aside or wiped out by every wave of popular clamor. There is too much disposition to set aside and ignore the organic law when there is a popular wave demanding such course. It is for the courts to steady the ship of State and hold the organic law intact.'   *   *   *   We should not suffer it to be used to destroy, little by little, the organic safeguards of personal and property rights until they all disappear.''

It is not necessary for decision herein and we do not hold that under proper circumstances a municipality may not exercise its delegated police power in the manner herein attempted by defendants. Instead the extent of our holding herein is that under the circumstances of the instant case the enforcement against the plaintiff of the provision in the amended ordinance fixing the minimum amount of floor area is unreasonable. In other words, under the circumstances disclosed by this record lot owners in the Bronx subdivision ought not to be deprived of utilizing their properties in the manner undertaken by plaintiff for the reason that property rights should not be divested under the authority of a municipality's police power, unless by so doing the public health, safety or welfare would be subserved. That requisite is not met in the instant case. Plaintiff's application for a building permit should have been granted. The writ of mandamus will issue as prayed, with costs of both courts to plaintiff.

BOYLES, C. J., and CHANDLER, STARR, WIEST, and SHARPE, JJ., concurred with NORTH, J.