## COUNTY COMMISSIONERS OF ANNE ARUNDEL COUNTY *v.* HERBERT S. WARD

[No. 112, October Term, 1945.]

*Decided April 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Benjamin Michaelson* for the appellants.

*Herbert S. Ward, pro se.*

HENDERSON, J., delivered the opinion of the Court.

On May 7, 1945, a petition for a writ of mandamus was filed against the appellants in the Circuit Court for Anne Arundel County, alleging that the appellee was the owner of two lots in a subdivision of Bay Ridge, having a frontage of 200 feet on Bay Drive and 243 feet on Upsher Ave.; that he made application on April 28, 1945 for a building permit to erect on the rear of his lots five rustic, 16' x 16' cabins at a cost of $300 per cabin, and one rustic central service building, 16' x 32', to cost $600; that the permit was refused on May 1, 1945; that the refusal was "arbitrary, unlawful and unjust and in violation of the plaintiff's rights."

An answer was filed to the petition setting up certain zoning regulations, adopted by the County Board on January 30, 1945, pursuant to authority conferred by

chapter 551 of the Acts of 1943. The petitioner demurred to the answer, and the case was submitted to the trial court upon an agreed statement of facts.

It is conceded that the application for permit complied in all respects with the building Code then in force, but it is also conceded that it violated the applicable zoning regulations, which called for "one-family residences; no apartments", not more "than one residence on a lot with a fifty (50) foot front", and no house "to contain less than 3,200 cubic feet" or "cost less than $2,500."

Bay Ridge is a peninsula located at the mouth of the Severn River, about four miles by road from Annapolis. Where not surrounded by water, or bordered by water, the area is bordered by privately owned farm land. The area contains about 300 acres and was surveyed and laid out in building lots about 1920; since that time it has been maintained as a residential community, with the exception of about 12 acres developed as a bathing beach and summer resort. Most of this acreage is covered with timber and unimproved. There are about 200 private residences, most of which are suitable for year-round habitation. Building restrictions substantially identical with the zoning restrictions were incorporated in the original deeds, but these expired in 1935. The petitioner purchased his lots subsequent to 1935. The proposal to zone was presented to the County Commissioners August 2, 1944, by Bay Ridge Civic Association, a body corporate. Several public hearings were held thereon, after due notice, and the regulations were finally adopted, with amendments, on January 30, 1945.

The enabling Act, chapter 551 of the Acts of 1943, effective May 4, 1943, read as follows:

"Zoning.

"516. For the purpose of promoting health, safety, morals, and the general welfare of the community, the County Commissioners of Anne Arundel County are hereby empowered to designate residence areas within said County and to regulate, restrict or prohibit the

location and use of buildings, structures and land for trade, industry, other commercial enterprises and residences or other purposes within said areas. Such regulations shall be made in accordance with a comprehensive plan. They shall be designed to reduce congestion in the roads, streets and alleys; to promote safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to provent the overcrowding of land and to avoid undue concentration of population; to facilitate adequate provision for schools, parks, water, sewerage, transportation and other public requirements, conveniences and improvements, including such public utility buildings, structures and facilities as may be required in each district for the storage and/or distribution of gas and electricity.

"For all or any of said purposes the County Commissioners of Anne Arundel County may designate within the County certain residence districts or divisions of such number, shape and area as may be deemed best suited to carry out the purposes of this sub-title, and within such districts they may regulate and restrict the erection, construction, reconstruction, alteration, repair and use of buildings, structures and land. All such regulations shall be uniform for each class or kind of building or structure throughout each district, but the regulations in one district may differ from those in other districts.

"517. The County Commissioners shall determine the manner in which regulations and restrictions, and the boundaries of such districts, shall be established and enforced, and from time to time amended, supplemented and changed. Before determining the boundaries of the proposed districts and the regulation to be enforced therein, they shall hold a public hearing or hearings thereon, giving at least fifteen days notice in a newspaper of general circulation throughout the County, of the place and time of the beginning of such hearing or hearings. The County Commissioners shall have power to

amend, supplement or repeal the regulations or restrictions adopted by them, provided that before doing so they shall follow the same procedure with respect to notice and public hearings as is herein provided for the original regulations and restrictions.

"518. The County Commissioners are hereby vested with such duties and powers as may be necessary and advisable for the proper administration of this sub-title and of such zoning regulations as they may adopt under the provisions of this sub-title, including the power to make general exceptions to permit continuance of existing uses and to permit limited trade or commercial uses of designated streets or blocks within residence areas, and including the power to summon and compel the attendance of witnesses.

"519. Any person, persons, taxpayer, officer, department, board or bureau of the County, jointly or severally aggrieved by any decision of the County Commissioners of Anne Arundel County, may, within thirty days after the filing of such decision in the office of the County Commissioners, appeal to the Circuit Court for Anne Arundel County.

"The said Court shall hear all such appeals *de novo* and shall have power to affrm the decision of the County Commissioners of Anne Arundel County, or reverse the same, in whole or in part, and may remand any case for the entering of a proper order or for further proceedings, as the Court shall determine.

"All issues in any proceeding under this sub-title shall have preference over all other civil actions and proceedings.

"520. The County Commissioners shall keep in a separate book all rules, regulations and restrictions adopted by them from time to time under the authority of this sub-title, and any amendments or supplements thereto, and shall cause copies to be printed and made available for general distribution. Any such printed copy, together with any amendments and supplements, when certified as accurate by the Chief Clerk of the County

Commissioners, shall be deemed *prima facie* evidence thereof in any judicial proceeding in the State.

"521. Any violation of regulations and restrictions adopted pursuant to this sub-title shall be a misdemeanor, punishable by a fine not to exceed One Hundred Dollars ($100.00), or by imprisonment not to exceed thirty days, or both fine and imprisonment. Any person who shall violate such regulations and restrictions shall be deemed guilty of a separate offense for every day that such violation shall continue. Any person whose property is affected by any violation, including abutting and adjacent property owners, whether specially damaged or not, may maintain an action in the Circuit Court for Anne Arundel County for an injunction, enjoining the erection, construction, reconstruction, alteration, repair or use of buildings, structures and land in violation of regulations and restrictions adopted pursuant to this sub-title.

"522. The County Commissioners of Anne Arundel County are hereby vested with full authority and power to levy on the assessable property in each zone created under the provisions of this Act, such amounts as may be necessary to effect the proper administration of this Act."

The regulations adopted read as follows:

"1. The entire area of Bay Ridge is to be strictly residential as per the duly recorded plat of Bay Ridge. It shall be limited to one family residences; no apartments. This shall not apply to the erection of a Community Club House and Pier to be erected by the residents of Bay Ridge.

"2. No Building shall be erected in Bay Ridge nearer to the avenue, street or drive on which it fronts, as now laid out on the plats of Bay Ridge Realty Corporation, than forty (40) feet, measuring on the center of the front lot line, or five (5) feet from the rear or side line. Any separate garage shall be erected on the rear part of lots and not less than seventy five (75) feet from the front Building line.

"3. There shall not at any time be more than one residence on a lot with a fifty (50) foot frontage. No building shall be erected on a lot having an average width of less than fifty (50) feet, or an area of less than 5,000 square feet.

"4. No house shall be constructed on any lot fronting the Severn River, the Chesapeake Bay, Sands Avenue, Lake Drive from Sands Avenue, to Decatur Avenue, Decatur Avenue, Barry Avenue and Farragut Road, to contain less than 5,000 cubic feet, and to cost less than $3,500. On all other lots no house shall be constructed to contain less than 3,200 cubic feet and cost less than $2,500. All buildings used as residences, or for business purposes in Bay Ridge shall conform to the Building Code and shall be provided with interior, sanitary plumbing.

"5. No wines, distilled, or fermented liquors, or intoxicating drinks of any kind shall be sold, or offered for sale in Bay Ridge.

"6. No hunting shall be permitted in the area zoned, and no poultry or animals except dogs and cats, and these not to be allowed to run at large shall be kept, nor any nuisance of any kind kept on property, which shall be dangerous to health or obnoxious.

"7. All wells shall be drilled and capped. (Artesian).

"8. All plumbing and septic tanks and disposal fields must be approved and passed by Anne Arundel County Board of Health. All residences built in Bay Ridge must be equipped with a bath tub or shower, lavatory, sink, flush toilet connected to septic tanks, grease trap and sub-soil drain.

"9. No commercial, manufacturing, industrial businesses of any kind, public bathing beaches, or places of public entertainment, shall be constructed, maintained or operated at any point within the zoning area, unless specifically permitted in covenant or deed executed prior to the adoption of these regulations, this shall not apply however, to a community house, or entertainment, which shall be conducted as a community enterprise.

"10. No building with its accessory buildings, shall occupy in excess of forty (40) percent of an interior lot, nor in excess of fifty (50) percent of a corner lot.

"11. The lawful use of the buildings or premises, as existing and lawful at the time of the adoption of any regulation heretofore or hereafter adopted may be continued, although such does not conform to the provisions of such regulation, provided no structural alterations, except such as may be required by law or regulation, or no enlargement is made, or no new building is erected. Where structural alterations are made to a building of a non-conforming use, such use shall be changed to a use consistent with the provisions of these regulations for the district in which such building is located, only if the cost of such exceeds thirty (30) percent of the cost of the original building."

Three questions seem to be presented on this appeal: (1) the constitutional validity of the enabling act, (2) whether the regulations adopted are within the scope of the powers granted by the enabling act, and (3) whether the action of the Board of County Commissioners in refusing to issue a building permit was arbitrary, unlawful and in violation of the plaintiff's rights.

Of the constitutional validity of a comprehensive zoning ordinance there can be little question, since the decision of the Supreme Court in *Euclid, Ohio, v. Ambler Realty Co.*, 272 U. S. 365, 71 L. Ed. 303. The area zoned in that case was the entire village of Euclid, a suburb of the City of Cleveland. The court said: "The serious question in this case arises over the provsions of the ordinance excluding from residential districts apartment houses, business houses, retail stores and shops, and other like establishments. This question involves the validity of what is really the crux of the more recent zoning legislation, namely, the creation and maintenance of residential districts, from which business and trade of every sort, including hotels and apartment houses, are excluded." The court upheld the ordinance and cited with approval *State ex rel. Civello v. New Orleans*, 154 La.

271, 282, 97 So. 440, 33 A. L. R. 260. However, in *Nectow v. Cambridge,* 277 U. S. 183, 72 L. Ed. 842, the Supreme Court recognized that the power to zone is not unlimited, and that particular use classifications may be set aside, where it is shown "that the health, safety, convenience and general welfare of the inhabitants of the part of the city affected will not be promoted by the disposition made by the ordinance of the *locus* in question." If the question is "fairly debatable," the zoning stands. *Zahn v. Board of Public Works,* 274 U. S. 325, 71 L. Ed. 1074; *Leventhal v. District of Columbia,* 69 App. D. C. 229, 100 F. 2d 94.

This court is fully committed to the proposition that zoning, in general, is a valid exercise of the police power. *R. B. Construction Co. v. Jackson,* 152 Md. 671, 137 A. 278. But the point raised, upon which the lower court seems to have based its decision, at least in part, is that the enabling act conferred the authority to zone only selected residential districts, without regard to the county as a whole. In *Ellicott v. Baltimore,* 180 Md. 176, 181, 23 A. 2d 649, 651, this court said: "The purpose of the zoning law is, of course, to devote general areas or districts to selected uses. 'The whole value of zoning lies in the establishment of more or less permanent districts, well planned and arranged.' *Rehfeld v. City and County of San Francisco,* 218 Cal. 83, 85, 21 P. 2d 419, 420." In *Kramer v. Mayor and City Council of Baltimore,* 166 Md. 324, 171 A. 70, it was held that the requirement of uniformity and comprehensiveness prescribed by the enabling act did not prevent the reservation of a right to deal with the location of filling stations in non-residential districts by special ordinances.

In *State ex rel. Civello v. New Orleans, supra,* the court said, 154 La. 271, 97 So. at page 445: "It is contended * * * the Constitution does not authorize the enactment of an ordinance applying to only one street, or to a very limited district, but contemplates that a zoning ordinance shall be so comprehensive as to affect the whole municipality, or at least a large proportion of its area. We do

not think so. * * * In some cities * * * it might be impracticable, to zone the whole area in one comprehensive ordinance." In *Town of Marblehead v. Rosenthal,* 1944, 316 Mass. 124, 125, 55 N. E. 2d 13, the court said: "Nothing in the statute * * * or in common sense requires a municipality to impose restrictions upon all of its territory as a condition of the exercise of its zoning powers. The defendants concede that it is a question of reasonableness."

In *Acker v. Baldwin,* 1941, 18 Cal. 2d 341, 115 P. 2d 455, authority to zone was conferred upon a county, and the county authorities selected an area four miles square, bordering the City of Los Angeles, and zoned it for residential use. This action was sustained, although the rest of the county remained unrestricted. See also *Board of Commissioners of Vanderburgh County v. Sanders,* 1940, 218 Ind. 43, 30 N. E. 2d 713. Compare *Frederick v. Board of Sup'rs, Jackson Co.,* 1945, 197 Miss. 293, 20 So. 2d 92.

We think there is no constitutional requirement that an entire municipality or county be zoned at one time, or that regulations be uniform throughout the county. The enabling act in the case at bar contemplates uniformity for each class or kind of building or structure in a particular district; it specifically recognizes that restrictions may vary as between districts. It is not beyond the power of the legislature to limit the authority conferred upon the local legislative body to one type of use regulation, leaving open other areas in which business or industrial uses are unregulated. And this is true even though writers upon the subject generally condemn "piece meal" zoning as undesirable and even hazardous, and refer to this method as "block" rather than "comprehensive" zoning. *Bassett, Zoning* (1940 Ed.) p. 90; *Matzenbaum, Law of Zoning* (1930) p. 20; *Bettman, Constitutionality of Zoning,* 37 Harv. L. R. 834, 842. The wisdom of the method followed is for the legislature, not the courts, to determine.

The enabling act calls for a comprehensive plan, but we think such a requirement is met, if due consideration is given to the common needs of a particular district. No doubt such needs will vary with each area zoned. In the case at bar, the whole area of Bay Ridge appears to have been platted and developed originally for residential use, within well-defined natural boundaries. Up to this time it has contained no industrial and few commercial enterprises. Regulation 11 preserves the rights of nonconforming uses. It is not necessary in this case to approve or disapporve all of the regulations adopted; it may be questioned, for example, whether the limitations of cubic content and cost of improvements are valid. *Bassett, Zoning* (1940 Ed.) to p. 187; *Senefsky v. Lawler,* 1943, 307 Mich. 728, 12 N. W. 2d 387; *Brookdale Homes, Inc., v. Johnson,* 123 N. J. L. 602, 10 A. 2d 477. Restrictive covenants, appropriate in contracts and deeds between private parties, may be wholly inappropriate in zoning regulations, which must be predicated upon a public interest. But the application for a permit to build five rustic cottages and a service cottage clearly violates Regulation 1, which limits the use to "one-family residences; no apartments," and this is the type of regulation that is usually found in zoning ordinances.

The appellee concedes that the proposed structures would constitute a technical violation of the regulations, but contends that the Board should have exercised discretion in granting the permit, in view of the housing shortage, and that its action was unreasonable. The Board of County Commissioners, as an administrative body, was bound to follow the regulations it adopted, in the exercise of its delegated legislative power. See *Oppenheimer Administrative Law in Maryland,* 2 Md. L. R. 185, 193. The fact that it might have re-zoned the area, upon due notice and after hearing, does not alter its obligation to adhere to existing regulations, or authorize it to make special exceptions in individual cases. *Chayt v. Zoning Appeals Board,* 177 Md. 426, 9 A. 2d 747, and cases cited; *Sugar v. North Baltimore Methodist Protestant Church,*

164 Md. 487, 165 A. 703. Compare *County Commissioners of Prince George's County v. N. W. Cemetery Co.,* 160 Md. 653, 154 A. 452, and *Gordon v. Commissioners of Montgomery Co.,* 164 Md. 210, 164 A. 676. The only exceptions specifically mentioned in the enabling act are "general exceptions to permit continuance of existing uses and to permit limited trade or commercial uses of designated streets or blocks within residence areas."

The case of *Potts v. Board of Adjustment,* 1945, 133 N. J. L. 230, 43 A. 2d 850, 852, is quite in point. In that case an application for leave to convert a single-family dwelling into a two-family apartment house, due to a "critical housing shortage," was denied. It was pointed out that the house was located in a residential district, zoned against two-family dwellings by a local ordinance, and that the local board was only empowered to make "marginal * * * adjustments between the opposing restrictions of adjoining districts," within the border area of 150 feet. The court said: "Equality and uniformity of operation within the particular zone, as respects each class and kind of buildings, are basic in the statute. Invidious distinctions and discriminations are inadmissible. The essence of zoning is territorial division according to the character of the lands and structures and their 'peculiar suitability' for particular uses, among others, and uniformity of use within the division." The court also said: "A housing shortage does not clothe the adjustment board with power to annul or modify zoning regulations. As noted, that is the function of the local legislative body."

For the reasons indicated, we think the refusal of the application was not arbitrary or unreasonable, and that the trial court should have dismissed the petition for mandamus. We express no opinion as to whether the petition would lie, in any event, in view of the provisions of sec. 519 of the enabling act, relating to appeals.

*Order reversed, and petition dismissed, with costs.*