FRISCHKORN CONSTRUCTION CO. *v.* REDFORD TOWNSHIP
BUILDING INSPECTOR.

1. MUNICIPAL CORPORATIONS—PROPERTY—POLICE POWER—PUBLIC
   HEALTH, SAFETY OR WELFARE.
   Property rights should not be divested under the authority of
   a municipality's police power, unless by so doing the public
   health, safety or welfare would be subserved.

2. SAME—ZONING ORDINANCE—POLICE POWER—AESTHETICS.
   In determining the validity of municipal zoning ordinances under
   the police power, aesthetics may be an incident but cannot be
   the moving factor.

3. TOWNSHIPS—ZONING ORDINANCE—CUBIC CONTENT OF RESIDENCES
   —PROPERTY.
   Township zoning ordinance requiring that residences within a
   given district have a cubical content of 14,000 cubic feet may
   not be enforced as to lot owner desiring to erect a house with
   12,657 cubic feet for the purpose of establishing or maintain-
   ing property values within the zone affected, where the house
   would comply with the State housing law and building re-
   strictions applicable to the subdivision (1 Comp. Laws 1929,
   § 2487 *et seq.*; Act No. 302, Pub. Acts 1937).

4. SAME—ZONING ORDINANCE—CUBIC CONTENT OF RESIDENCE—PROP-
   ERTY—PUBLIC HEALTH, SAFETY OR WELFARE.
   In determining the validity of application of provision of town-
   ship ordinance requiring that residences in a particular district
   shall have a specified cubic content, where such provision may
   not be sustained in order to establish or maintain property
   values, validity is tested by whether the public health, safety
   or welfare would be promoted thereby (Act No. 302, Pub.
   Acts 1937).

5. MUNICIPAL CORPORATIONS—REASONABLENESS OF ZONING ORDI-
   NANCE.
   In determining the reasonableness of a zoning ordinance, each
   case must be determined upon its own facts.

6. Same—Zoning Ordinance—Reasonableness.

A zoning ordinance must be reasonable and its reasonableness becomes the test of its legality.

7. Same—Zoning Ordinance—Statutes.

An ordinance enacted pursuant to a zoning act must bear a reasonable relation to the powers conferred by the act.

8. Same—Zoning Ordinance—Public Health, Morals, Safety or Welfare.

Restrictions imposed by an ordinance enacted by a municipality pursuant to a zoning act must tend in some degree to promote the public good and bear a substantial relation to the public health, morals, safety or welfare in its proper sense.

9. Same—Zoning Ordinance—Power Conferred—Property.

The mere power to enact a zoning ordinance does not carry with it the right arbitrarily or capriciously to deprive a person of the legitimate use of his property.

10. Townships—Zoning Ordinance—Minimum Cubic Content.

Where houses, if constructed as planned, would comply with township zoning ordinance except that they would have a content of 12,657 cubic feet rather than minimum of 14,000 cubic feet required by ordinance and additional content provided by construction of larger unfinished attics or other methods suggested by witnesses would not tend to protect or promote health, safety, or public welfare, and houses constructed as planned would be larger than in contiguous districts of township, enforcement of cubical content provision is unreasonable (Act No. 302, Pub. Acts 1937).

11. Costs—Public Question—Township Zoning Ordinance.

No costs are allowed in mandamus proceeding where question involved is one of public interest pertaining to application of township zoning ordinance (Act No. 302, Pub. Acts 1937).

Appeal from Wayne; Ferguson (Frank B.), J. Submitted June 18, 1946. (Calendar No. 43,278.) Decided September 11, 1946.

Mandamus proceedings by Frischkorn Construction Company, a Delaware corporation, against Leonard Lambert, building inspector of Redford Township, and others to compel the issuance of

building permits. Writ granted. Defendants appeal. Affirmed.

*Kenneth Murray,* for plaintiff.

*Joseph W. McDonnell,* for defendants.

CARR, J. This case involves the validity of a provision of a zoning ordinance of defendant township, as applied to certain lots owned by plaintiff. The ordinance in question was adopted in March, 1942, under authority granted by Act No. 302, Pub. Acts 1937 (Comp. Laws Supp. 1940, §§ 2651–11 *et seq.* [Stat. Ann. 1942 Cum. Supp. §§ 5.2962 (1)–5.2962 (12)]). The general purpose of said act was indicated in the title which read as follows:

"An act to provide for the establishment in certain organized townships of districts or zones lying wholly outside of the corporate limits of cities and villages, within which districts or zones the use of land, natural resources and structures, the height, the area, the size and location of buildings may be regulated by ordinance, and within which districts regulations may be established for the light, ventilation, sanitation and protection of such buildings, and within which districts the density of population may be regulated by ordinance; to provide for the administering of this act, and for a planning board; to provide penalties for violation; to provide against conflict with State housing code or other acts, ordinances or regulations; to provide for the collection of building permit fees in benefited districts and of taxes therefor; to provide for petition, public hearing and a referendum by the electors."

This act was repealed by Act No. 184, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 2651–71 *et seq.* [Stat. Ann. 1945 Cum. Supp. § 5.2963 (1)–§ 5.2963

(31)]). By specific provision of the repealing act, however, ordinances previously adopted by townships under the act of 1937, remained in full force and effect, subject to adoption of a new ordinance relating to the subject matter.

The ordinance in question is based on a master plan prepared for the township by a civil engineer and adopted by the township planning board. It divides the township into 10 districts, some of which are subdivided into zones, and prescribes regulations and restrictions with reference to the location of commercial enterprises, to land utilization, the height, area, size, bulk and location of buildings, and lighting, ventilation, and sanitation. A commercial zone is established in district 5, with which we are concerned in this case, and also certain residence zones. The ordinance provides that in zone C of said district only single dwellings shall be constructed, containing a minimum of 800 square feet on the first floor level and with a minimum content, computed on a prescribed basis, of 14,000 cubic feet.

Plaintiff, being the owner of lots 1300 and 1461 in Frischkorn's Grand Dale Gardens subdivision, located in zone C, made application for permits to construct dwelling houses thereon, in accordance with specifications set forth in the applications and accompanying plans. Defendant Lambert, the building inspector of the township, refused the permits for the reason that each proposed residence would contain only 12,657 cubic feet. It is conceded that the plans otherwise complied with the ordinance, with the State housing law (1 Comp. Laws 1929, § 2487 *et seq.* [Stat. Ann. § 5.2771 *et seq.*]), and with building restrictions applicable to the subdivision.

Following the denial of the permits plaintiff appealed to the board of appeals of the township,

which sustained the action of the inspector. Thereupon application was made to the circuit court for a writ of mandamus to compel the issuance of the permits. After listening to the proofs and arguments of the parties, and making inspection of zone C, the trial court came to the conclusion that the requirement as to cubical content, prescribed by the ordinance for houses to be constructed in said zone, was as applied to the lots in question, unreasonable and, therefore, invalid. An application for rehearing was made and denied, and defendants have appealed.

It is the claim of plaintiff that the application of the cubical content provision of the ordinance to the residences it desires to construct on the lots referred to would operate to deprive plaintiff of its property without due process of law, amount to a taking of private property for public use without just compensation, and is an attempted unwarranted exercise of police power. It is further claimed specifically that such provision does not tend in any way to promote or protect the "public health, safety, morals or welfare." On behalf of defendants it is insisted that the minimum requirement in question was authorized by the act of the legislature pursuant to which the ordinance was adopted, and that its application to plaintiff's lots is not unreasonable. It is argued that such requirement tends to promote the public welfare, that it is conducive to the carrying out of the general plan as contemplated by the zoning ordinance, and that plaintiff has failed to establish that its application to plaintiff's lots is unreasonable.

In reaching the conclusion that plaintiff was entitled to the relief sought, the trial court pointed out that in zone B, located in district 5, south of zone C, single residences may be constructed with

600 square feet of first floor space and a content of 12,000 cubic feet; that in zone D, which lies north and east of zone C, like minimum requirements are imposed; and that in zone E, which lies north of the west two-thirds of zone C, minimum requirements are 480 square feet of first floor space, with a content of 7,500 cubic feet. He further found, after viewing the premises, that in the west two-thirds of zone C, the houses are nearly all of one floor construction, with attic space above. In the opinion filed it was said, with reference to the situation in this respect:

"Approximately 75 per cent. or more of the houses in residence zone C are of the small home type; that is one floor for living quarters and an attic for storage space."

On the hearing in the trial court plaintiff offered the testimony of the assistant to the president of plaintiff corporation, and of its construction superintendent. Defendants relied on the testimony of a former building inspector of the township. The witnesses were examined at some length with reference to the feasibility of increasing the attic space by changing the proposed construction, so as to obtain a minimum house content of 14,000 cubic feet. It is conceded that plaintiff's plans, submitted with its applications for the permits, contemplated 816 square feet on the first floor level, slightly in excess of the minimum requirement in this regard. The trial court concluded, from the testimony and from his view of the premises, that increasing the size of the attic by altering the plans would not furnish additional usable space and would not in any way promote the health, safety, or public welfare. Obviously, such action would result merely in a larger unfinished attic. The testimony also indicates that

enlarging the cubical content of the proposed houses by raising the first floor ceiling would not tend to improve conditions from the standpoint of health, or otherwise, but would, in fact, add to the heating problem.

Plaintiff relies on the decision of this court in *Senefsky* v. *City of Huntington Woods*, 307 Mich. 728 (149 A. L. R. 1433), cited by the trial court in his opinion. It was held in that case that a provision of the zoning ordinance of the defendant city requiring a minimum of 1,300 square feet of usable floor area was an unwarranted exercise of police power, as applied to the proposed residence for which the plaintiff sought a building permit. In reaching this conclusion it was said:

"It is not necessary for decision herein and we do not hold that under proper circumstances a municipality may not exercise its delegated police power in the manner herein attempted by defendants. Instead the extent of our holding herein is that under the circumstances of the instant case the enforcement against the plaintiff of the provision in the amended ordinance fixing the minimum amount of floor area is unreasonable. In other words, under the circumstances disclosed by this record lot owners in the Bronx subdivision ought not to be deprived of utilizing their properties in the manner undertaken by plaintiff for the reason that property rights should not be divested under the authority of a municipality's police power, unless by so doing the public health, safety or welfare would be subserved."

It was further pointed out that the record in the case indicated no justification for the attempt to enforce the ordinance against plaintiff other than a desire to enhance or protect the value of other property in the subdivision. The case of *Wolverine*

*Sign Works* v. *City of Bloomfield Hills,* 279 Mich. 205, was cited in this connection. It was there said: "Aesthetics may be an incident but cannot be the moving factor," in determining the validity of building restrictions under the police power. Applying this principle in the case at bar the conclusion follows that the ordinance requirement as to cubical content may not be enforced against plaintiff, insofar as the construction here involved is concerned, for the purpose of establishing or maintaining property values within the zone affected. Rather, the test is whether the "public health, safety or welfare," would be promoted thereby. The question must be determined in each case of this character on the basis of the facts and circumstances involved. *Pere Marquette R. Co.* v. *Muskegon Township Board,* 298 Mich. 31. See, also, *Moreland* v. *Armstrong,* 297 Mich. 32, where it was said:

"A zoning ordinance must be reasonable, and its reasonableness becomes the test of its legality."

The decision in *Senefsky* v. *City of Huntington Woods, supra,* is reported in 149 A. L. R. 1433, followed by an annotation in which it is stated:

"A careful search has revealed no decision, other than the preceding case, factually in point on the question involved in this annotation."

*Brookdale Homes, Inc.,* v. *Johnson,* 123 N. J. Law, 602 (10 Atl. [2d] 477) (affirmed 126 N. J. Law, 516 [19 Atl. (2d) 868]), cited by this court in the *Senefsky Case,* was, however, discussed as recognizing the same principle. It was there held that a provision of a zoning ordinance attempting to prescribe a minimum height for residences constructed within a certain zone was unreasonable. The apparent purpose sought to be accomplished by such provi-

sion was to prevent the erection within the zone affected of dwellings of the so-called bungalow type. In reaching the conclusion indicated, the court said in part:

"It is settled that an ordinance under the zoning act must bear a reasonable relation to the powers conferred by that act. *Phillips v. Township Council of the Township of Teaneck,* 120 N. J. Law, 45, 48 (198 Atl. 368); affirmed, 122 N. J. Law, 485 (5 Atl. [2d] 698). Restrictions imposed pursuant to the zoning act must tend at least in some degree to promote the public good; they must bear a 'substantial relation to the public health, the public morals, the public safety or the public welfare in its proper sense.' *Nectow v. City of Cambridge,* 277 U. S. 183 (48 Sup. Ct. 447, 72 L. Ed. 842); *Gabrielson v. Borough of Glen Ridge,* 13 N. J. Misc. 142 (176 Atl. 676); *Phillips v. Township Council of the Township of Teaneck, supra; Phillips Oil Co. v. Municipal Council of the City of Clifton,* 120 N. J. Law, 13 (197 Atl. 730); *179 Duncan Avenue Corp. v. Board of Adjustment of Jersey City,* 122 N. J. Law, 292 (5 Atl. [2d] 68); *Spur Distributing Co., Inc., v. City Council of Bridgeton,* 122 N. J. Law, 460 (6 Atl. [2d] 192). (Cf. *Resciniti v. Board of Commissioners of Belleville,* 117 N. J. Law, 1 (186 Atl. 439); *Watchung Lake, Inc., v. Mobus,* 119 N. J. Law, 272 (196 Atl. 223.)

"Thus while our legislature has unquestionably given municipalities the right to pass ordinances 'to regulate and restrict the height, number of stories, and sizes of buildings,' such ordinances to be valid must be designed to promote public health, safety, and general welfare. R. S. 40: 55–30. The mere power to enact an ordinance such as the one here involved does not carry with it the right arbitrarily or capriciously to deprive a person of the legitimate use of his property.

"We fail to see, in the case before us, how the ordinance in question promotes public health, safety

and the general welfare. Cf. *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 N. J. Law, 183 (147 Atl. 555). The town's fire chief, chief of police, health officer and building inspector all testified that a house built 26 feet above the foundation did not promote public health, safety or general welfare more than a house built only 21 feet above the foundation.''

In the case at bar, denying plaintiff the right to construct the proposed houses unless the plans therefor are altered to provide a minimum content of 14,000 cubic feet, would not tend to protect or promote health, safety, or public welfare. Such result would not follow from constructing larger unfinished attics than proposed, or by obtaining the prescribed content by adopting any other plan or method suggested by the witnesses. The houses, if constructed as planned, will comply with all of the ordinance requirements except in the one particular. They will also be larger than residences authorized under regulations applicable in contiguous zones. Tested by the principle approved in *Senefsky* v. *City of Huntington Woods, supra,* and in the other cases above cited, the requirement sought to be imposed by the ordinance with reference to the cubical content of residences in zone C, district 5, of defendant township, is unreasonable as applied to the houses for which plaintiff seeks permits. On the record before us we find that the trial court reached the correct conclusion.

The order directing the issuance of the writ of mandamus is affirmed. The question being of public interest, no costs are allowed.

Butzel, C. J., and Bushnell, Sharpe, Boyles, Reid, and North, JJ., concurred. Starr, J., took no part in the decision of this case.