O’NIELL, C. J.
The main question in this case is whether a so-called zoning ordinance of the city of New Orleans, forbidding business establishments in a designated residence district, is a valid exercise of the police power. There are six such suits, contesting j;he validity of several zoning ordinances, and the constitutionality of the statute authorizing them. In this case, and in the case entitled State ex rel. Dubos et al. v. City of New Orleans (No. 25592) 97 South. 445,[1] the relators are claiming the right to establish and conduct groceries — specifically, “PigglyWiggly” stores — in residence districts in which, by municipal ordinances, the establishment of the business is forbidden. In two other cases, Liberty Oil Co. v. City of New Orleans (No. 25676) 97 South. 446,[2] and State ex rel. Traverse v. City of New Orleans (No) 24706) 97 South. 446,[3] the relators are claiming the right to establish and conduct drive-in filling stations for the accommodation of automobiles, at opposite corners of the intersection of Esplanade avenue and Broad street, where the establishment of the business is forbidden by another ordinance. In another case, J. K. Boland et al. v. Charles Compagno (No. 25540) 97’ South. 661,[4] the plaintiffs are trying to prevent the defendant’s conducting a vegetable and fruit stand, and an oyster counter, in a residence district, where the establishment of suchobusiness is forbidden by another ordinance. And in the sixth case, State ex rel. Hayes v. City of New Orleans (No. 25695) 97 South. 446,[5] the relator is claiming the right to establish an ice factory, where the business is specifically forbidden by ^another ordinance.
Because the six cases presented substantially the same issue, they were set down for argument in the same week and were argued and submitted as one case. In that way, each contestant of the city’s authority has had the benefit of every other contestant’s pleadings, arguments, and contentions, and the reasons which will lead us to a conclu-. sion in this case will thus dispose of the main issue in the five other cases.
The civil district court gave judgment in favor of relator, commanding the municipal authorities to issue a permit to him to construct a building to be used as a grocery store on his lot at the corner of Baronne and General Taylor streets, or to remodel the building already there, and make it a grocery store. ■ The city has appealed.
One issue in this case is not in the other cases mentioned. The ordinance that purported ' to forbid the establishment of the grocery store when reiator applied for the permit had been adopted before the city was especially authorized to adopt such an ordinance. The authority was given specifically, afterwards, by Act 27 of 1918, p. 35, viz.:
*276 “Be it enacted by the General Assembly of the state of Louisiana that the municipal authorities of cities of more than 50,000 inhabitants shall have authority by ordinance to define and regulate the kind, style and manner of construction of buildings and other edifices which may be erected on certain designated streets and thoroughfares and to permit or prohibit the establishment and operation of businesses and trades within designated limits.”
Before the enactment of the statute of 1918, the municipal council of the city of New Orleans depended upon the provisions of the city’s charter (Act 159 of 1912, p. 253), particularly upon the provisions of section 1, paragraph (e), and section 6, paragraph 2 (c), for authority to forbid business establishments in designated residence districts, and this court had decided, in Calvo v. City of New Orleans, 136 La. 480, 67 South. 33S (in January, 1915), and again in State ex rel. Blaise v. City of 'New Orleans, 142 La. 73, 76 South. 244 (in June, 1917), that the city’s charter did not give the municipal council authority to enact such an ordinance.
It was therefore contrary to the ruling in the Calvo Case and in the Blaise Case, that the municipal authorities refused to issue a permit to the relator in this case to remodel his building, or to construct another building on his lot, to be used as a grocery store. On the next day after this mandamus suit was filed, the municipality adopted another ordinance on the subject, under authority of the statute which had been enacted subsequent to the ruling in Calvo’s Case and in Blaise’s Case. The decision in the latter case was rendered on the' 30th of June, 1917, and from the circumstance that Act 27 of 1918 was enacted at the next session of the Legislature, which convened only a few months later, we assume that the statute was suggested by the court’s ruling in Blaise’s Case.
The ordinance' that was in effect when relator applied for a permit, and until this mandamus suit was filed, was Ordinance I No. 1599, Commission Council Series, adopted on July 7, 1914, forbidding the establishment of any grocery, barroom, private market or meat market, oyster shop, fruit shop, livery stable, nickel show, storeroom, warehouse, barber shop, blacksmith shop, or foundry on Dryades street, between Amelia street and Napoleon avenue, or on Peniston street, between S't. Charles ravenue and Magnolia street, or on General Taylor street, between St. Charles avenue and Magnolia street. The ordinance concluded with a statement that its object and purpose was to confine the use or occupancy of buildings on the streets mentioned to residences only. The grocery store which relator purposes to establish on General Taylor street, being at the corner of Baronne street, is between St. Charles avenue and Magnolia street.
The ordinance that was enacted on the day after this suit was filed is Ordinance No. 6789, C. C. S., forbidding the establishment or carrying on of any business, trade, or manufactory whatsoever, in or on any square or block between St. Charles avenue and broad street, and bounded on any of its sides by General Taylor street. Relator’s lot is within that area.
The first section of the ordinance forbids the establishment or carrying on, specifically, of any garage, or building, or place where automobile trucks or other gasoline-propelled vehicles, or automobile accessories or supplies, are stored, sold, parked, cleaned, repaired, or manufactured. The second section forbids, specifically, any theater, nickelodeon, motion picture show, or other place of amusement. The third section forbids, specifically, any blacksmith shop, factory, or manufacturing plant. The fourth section forbids, specifically, any oyster shop, or private market, or any stable; and the fifth section, in general terms, forbids “any other sort of business, trade or manufactory whatsoever.”
Relator contends that the original Ordi *277 nance No. 1599 was without’effect after the rulings in the Calvo Case and the Blaise Case, and that the Ordinance No. 6789 is unconstitutional and invalid, and that, even if it should be declared valid, it should not be given a retroactive effect, so as to govern this ease.
Since the enactment of the statute of 1918, giving the city of New Orleans express authority to adopt such ordinances as are now contested, the public policy has been expressed also in a Constitutional Convention. Section 29 of article 14 of the Constitution of 1921 declares:
“All municipalities are authorized to zone their territory, to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts.”
That provision in the new Constitution, of course, did not add anything to the authority of the Legislature to allow municipalities to zone their territory, to create residential, commercial, and industrial districts, and to prohibit the establishment of places of business in residential districts. It was sufficient that the Constitution did not expressly prevent the exercise of the police power in that respect. We assume, therefore, that the intent and purpose of the expression in section 29 of article 14 of the new Constitution was that the authority which was conferred upon the city of New Orleans by the Act 27 of 1918, and which was extended to all municipalities by the provision in the new Constitution, should prevail over whatever was said to the contrary in the opinion of this court in Calvo’s Case and in Blaise’s Case. The act of 1918 had reference only to the city of New Orleans, because New Orleans was then — and probably it is yet — the only city of 50,000 inhabitants in the state.
If the municipal council had not enacted the Ordinance No. 6689, but had relied upon the Ordinance No. 5599, we might, in respect for the expressions of the Legislature and of the Constitutional Convention, and in the light of recent decisions of the Supreme Court of the United States, and of several state courts of last resort, depart from the ruling made in Calvo’s Case, and repeated in Blaise’s Case, and maintain that the Ordinance No. 5599 was within the authority granted in the city’s charter, and was a valid exercise of the police power. But it is not necessary now to reconsider the rulings made in the cases that arose previous to the enactment of the statute of 1918; for our opinion is that relator’s contentions with regard to the statute are not well founded. The first contention is that the statute had more than one object, and was therefore violative of article 31 of the Constitution of 1913. Section 16 of article 3 of Constitution of 1921. On the contrary, the one and only object of the statute was to authorize cities of more than 50,000 inhabitants to determine by ordinance what kind or style of buildings might or might not be constructed, and what kind of business, if any, might or might not be carried on, in any designated locality. The constitutional requirement that each statute shall have only one object does not mean that a statute shall not deal with more than one branch of the same subject. The subject of determining what kind or style of buildings may or may not be constructed in any designated street or streets, and what kind of business, if any, may or may not be carried on in any designated street or streets, are branches of one and the same subject. The subject referred to is the law of city planning and zoning. It has lately become a very important branch of the law affecting municipal corporations. It was made the exclusive subject of a very worthy text-book, of more than 700 pages, published last year, written by Hon. Frank Backus Williams, of the New York bar. The question whether it is within the police power of a municipal government to designate or set apart residence zones or' districts, and to exclude business establishments from such *280 zones or districts, has had too much of the attention of the bench and bar not to be recognized now as a well-defined subject. The Act 27 of 1918 deals with that one subject. That the statute authorizes municipalities to do two things — that is, to determine what kind of buildings may or may not be constructed on any designated street or streets, and to determine what kind of business may be conducted on any designated street or streets — does not give the statute a double object. Even if the statute itself undertook to do what it merely authorizes municipal governments to do, we doubt that it would violate the constitutional prohibition against having two or more objects. But to say that a statute violates the constitutional prohibition if it authorizes a municipal council to legislate on more than one subject would be to say that all legislative municipal charters, and all statutes enacted for the government of municipal corporations generally, like the Act 136 of 1898, p. 224, known as the Lawrason Act, for example, are unconstitutional. That is, manifestly, not so. The Act 27 of 1918 is not violative of the constitutional prohibition against a statute’s having more than one object.
Relator’s argument that the Ordinance No. 6689 cannot govern this case without having a retroactive effect is not well founded. It is based upon the idea that relator, by applying for the permit, and by filing this mandamus suit to compel the issuance of the permit, became invested with an absolute right to the permit, which could not be divested by any subsequent legislation by the municipal council. It was a duty of the city architect, to whom the application for the permit was made, either to withhold it or to issue It, according to whether it would or would not violate a municipal ordinance. I-Ie observed that to issue the permit would violate Ordinance No. 1599. It is true, this court had declared similar ordinances ultra vires, in the Calvo Case and in the Blaise Case; ,but 'the city architect was not therefore compelled to ignore the Ordinance No. 1599, or declare it ultra vires or invalid. Even if we should say that he was wrong in refusing to issue the permit, the effect was not to stay the authority of the municipal council to legislate upon the subject.
The principal question in this case, and in the five other cases pending, is whether the zoning of a city, as the Constitution calls it— creating residence districts and commercial or industrial districts, and prohibiting business establishments in residence districts — is a valid exercise of the police power. It is not disputed that, since the enactment of the statute of 1918, the city of New Orleans has the authority to adopt these zoning ordinances, if it is or can be a part of the police power of municipal government. Nor is it disputed 'that the statute itself was always in' accord with the provisions of the state Constitution. The only question, therefore, is whether the provisions of the statute, and of the new Constitution itself, are violative of some guaranty in the federal Constitution. Relator’s contentions in that respect are that the provisions in the state Constitution, and the statute, undertake to authorize municipal governments to deprive the citizens of their property without due process of law, and to take private property for public use without just compensation, and that the municipal ordinances enacted in virtue of the supposed authority deny to relator, and the property holders generally, the equal protection of the laws.
There are some expressions of opinion in the Blaise Case, and some inferences to be drawn from the opinion in the Calvo Case, that sustain relator’s contentions.. The oply proposition that was actually decided, however, in the Calvo Case, was that the municipal charter (Act 159 of 1912, p. 253) did not confer upon the commission council of the city of New Orleans authority to exclude business establishments from any designated residence street. The proscribed business *281 which the court allowed the relator to establish on the residence street in that case was a grocery. It was said in the course of the opinion that an ordinance banning grocery stores in a residence district could be inspired only by- «esthetic considerations, and could not be sustained on considerations of public health, safety, morals, comfort, or general welfare. But that idea was not a necessary reason for the decision rendered in the case, and the expression was altogether unnecessary, after the court had concluded that the municipal charter did not authorize the commission council to enact such an ordinance. In the Blaise Case the author of the opinion went so far as to say that a similar ordinance was founded only upon «esthetic considerations, even in so far as it forbade the establishment of a private meat market on a street set apart for residences only. The decision, however, merely followed and affirmed the ruling that had been made'in the Calvo Case, which was that the municipal charter did not give the city the authority to enact such an ordinance. The reference to the so-called «esthetic considerations, in both cases, was only in aid of the court’s reasoning as to whether the Legislature had intended that the authority to enact such ordinances should be given to the city by the broad and general provisions of the city’s charter. Taking for granted — and for its major premise — that the proscribing of business establishments generally, in designated residence districts, was done only for «esthetic considerations, and' could not be sustained upon considerations of public health, safety, comfort, or general welfare, the court’s conclusion was that the Legislature had not intended that the authority conferred by the general terms of the city’s charter should include the authority to proscribe any and all business establishments in any designated residence street or district. Our opinion is that the court’s major premise was wrong. In so far, therefore, as those decisions maintain that a municipal ordinance proscribing business establishments generally in a designated residence street or district is essentially only a matter of sestheticism, and cannot be sustained upon considerations of public health, safety, comfort, or the general welfare, the two decisions are now overruled.
It is not necessary, for the validity of the ordinances in question, that we should deem the ordinances justified by considerations of public health, ssifety, comfort, or the general welfare. It is sufficient that the municipal council could reasbnably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
The attorneys for appellant have suggested several considerations that might well have prompted the enactment of the ordinances in question. In the first place, the exclusion of business establishments from residence districts might enable the municipal government to give better police protection. Patrolmen’s beats are larger, and therefore fewer, in residence neighborhoods than in business neighborhoods. A place of business in a residence neighborhood furnishes an excuse for any criminal to go into the neighborhood, where, otherwise, a stranger would be under the ban of suspicion. Besides, open shops invite loiterers and idlers to congregate; and the places of such congregations need police protection. In the second place, the zoning of a city into residence districts and commercial districts is a matter of economy in street'paving. Heavy trucks, hauling freight to and from places of business in residence districts, require the city to maintain the same costly pavement in such districts that is required for business districts; whereas, in the residence districts, where business establishments are excluded, a cheaper pavement serves the purpose. It is pointed out, too, that the fire hazard is greater in the neighborhood of business establishments than it is in residence districts. A better and move ex *283 pensive ' fire department — better equipment and younger and stronger men — are needed in the business centers, where the buildings are taller, than in the residence districts.
Aside from considerations of economic administration, in the matter of police and fire protection, street paving, etc., any business establishment is likely to be a genuine nuisance in a neighborhood of residences. Places of business are noisy; they are apt to be disturbing at night; some of them are malodorous ; some are unsightly; some are apt to breed rats, mice, roaches, flies, ants, etc. Property brings a better price in a residence neighborhood where business establishments are excluded than, in a residence neighborhood where an objectionable business is apt to be established at any time.
If the municipal council deemed any of the reasons which have been suggested, or any other substantial reason, a sufficient reason for adopting the ordinance in question, it is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is1 to the ballot — not the courts.
Due process of law and the equal protection of the laws are had when the laws affect alike all persons similarly situated. Walston v. Nevin, 128 U. S. 582, 9 Sup. Ct. 192, 32 L. Ed. 544; Leeper v. Texas, 139 U. S. 467, 11 Sup. Ct. 577, 35 L. Ed. 225; Giozza v. Tierman, 148 U. S. 662, 13 Sup. Ct. 721, 37 L. Ed. 599; Duncan v. Missouri, 152 U. S. 382, 14 Sup. Ct. 570, 38 L. Ed. 485.
An ordinance that forbids any and every citizen to conduct any business establishment in a designated residence district does not discriminate arbitrarily against persons owning property in the district. The ordinance affects alike all persons similarly situated. In fact, it affects absolutely every one alike, in that the same privilege is denied to any and every one.
The Supreme Court of the United States maintains, and the state courts that have dealt with this subject also maintain, that ¿esthetic considerations alone do not justify an exercise of the police power to limit a person’s right to use his property as he sees fit. It is said, though, that if the primary consideration for the enactment of an ordinance limiting the individual’s right to use his own property is a substantial consideration of public health, safety, comfort, or general welfare, considerations of taste and beauty may also enter in, and be not out of place. Welch v. Swasey, 214 U. S. 91, 108, 29 Sup. Ct. 567, 53 L. Ed. 923; Ayer v. Com’n on Height of Buildings in Boston (1922) 242 Mass. 30, 136 N. E. 338; Opinion of Justices, 234 Mass. 597, 127 N. E. 525; Cochran v. Preston, IOS Md. 220, 70 Atl. 113, 15 Ann. Cas. 1048.
If by the term “¿esthetic considerations” is meant a regard merely for outward appearances, for good taste in the matter of the beauty of the neighborhood itself, we do not observe any substantial reason for saying that such a consideration is not a matter of general welfare. The beauty of a fashionable residence neighborhood in a city is for the comfort and happiness of the residents, and it sustains in a general way the value of property in the neighborhood. It is therefore as much a matter of general welfare as is' any other condition that fosters comfort or happiness, and consequent values generally of the property in the neighborhood. Why should not the police power avail, as well to suppress or prevent a nuisance committed by offending the sense of sight, as to suppress or prevent a nuisance committed .by offending the sense of hearing, or the olfactory nerves? An eyesore in a neighborhood of residences might be as much a public nuisance, and as ruinous to property values in the neighborhood generally, as a disagreeable noise, or odor, or a menace to safety or health. The difference is not in principle, but only in degree. *285 In fact, we believe that the billboard case, Cusack v. Chicago, 242 U. S. 526, 37 Sup. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594, or St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269, 39 Sup. Ct. 274, 63 L. Ed. 599, or the skyline case, Welch v. Swasey, 214 U. S. 91, 29 Sup. Ct. 567, 53 L. Ed. 923, or the case of Hubbard v. Taunton, 140 Mass. 467, 5 N. E. 157, might have rested as logically upon the so-called aesthetic considerations as upon the supposed other considerations of general welfare.
The Supreme Court of the United States has decided, at least three times'since we decided the Calvo Case, that a municipal government "may, for the general welfare, exercise the police power to the extent of forbidding the owners of property in a designated residence district to use their property for business purposes. See Hadacheek v. Los Angeles, 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927; Cusack v. Chicago, 242 U. S. 529, 37 Sup. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594; St. Louis Poster Co. v. St. Louis, 249 U. S. 269, 39 Sup. Ct. 274, 63 L. Ed. 599. And the court of last resort in each of the following states has recognized the authority of cities to enact so-called zoning ordinances, creating residence districts and commercial districts, and prohibiting business establishments in residence districts, viz.: In New York, see Lincoln Trust Co. v. Williams Building Corporation, 229 N. Y. 313, 128 N. E. 209; City of Utica v. Hanna, 202 App. Div. 610, 195 N. Y. Supp. 226; Cohen v. Rosevale Realty Co., 120 Misc. Rep. 416, 199 N. Y. Supp. 8; In re Russell (Sup.) 158 N. Y. Supp. 162; People ex rel. Sheldon v. Board, 115 Misc. Rep. 449, 189 N. Y. Supp. 772; Cromwell v. American Bible Society, 202 App. Div. 625, 195 N. Y. Supp. 217. In Massachusetts, see Opinion of Justices, 234 Mass. 597, 127 N. E. 525, and Commonwealth v. Atlas (Mass.) 138 N. E. 243. In New Jersey, see Cliffside Park Railroad Co. v. Cliffside Park, 96 N. J. Law, 278, 114 Atl. 797, and Schait v. Senior (N. J. Sup.) 117 Atl. 517. In Iowa, see Des Moines v. Manhattan Oil Co., 193 Iowa, 1096, 184 N. W. 823, 188 N. W. 921, 23 A. L. R. 1322. In Utah, see Salt Lake City v. Western Foundry Co., 55 Utah, 447, 187 Pac. 829. In Missouri, see Kansas City v. Liebi, 252 S. W. 404 (April, 1923). In Kansas, see City of Wichita v. Ware, 113 Kan. 153, 214 Pac. 99.
It is contended on behalf of relator that section 29 of article 14 of the Constitution does not authorize the enactment of an ordinance applying to only one street, or to a • very limited district, but contemplates that a zoning ordinance shall be so comprehensive , as to affect the whole municipality, or at least a large proportion of its area. We do not think so. The exact language is that all municipalities are authorized to zone their territory; to create residential, commercial, and industrial districts, and to prohibit the establishment of places of business in residential districts. Our understanding is that what is said after the expression “to zone their territory” merely explains the comparatively new meaning of the verb “zone”; that is, to separate the commercial_or industrial district or districts from the residence district or districts, and to prohibit the establishment of places of business in any designated residence district. This provision in the new Constitution would have the same meaning without the expression “to zone their territory”; but its meaning might be very doubtful without an explanation of the expression, “to zone their territory.” In some cities, particularly in modern cities, it might be feasible; whereas, in other cities, particularly the old-time places, it might be inpracticable, to zone the whole area in one comprehensive ordinance. The language in the new Constitution does not purport to limit the discretion of the municipal governments in that respect. As we have said, this affirmative expression in the new Constitu *287 tion was not at all necessary. It was sufficient, for the exercise of the police power in the matter of city planning and zoning, that the Constitution did not forbid it. The manifest purpose of the expression in the new Constitution was, not to confer any less authority upon all municipalities than the Legislature had conferred upon New Orleans by the Act 27 of 1918, hut to make sure that the doctrine of the decision in the Calvo Case and Blaise Case should not continue to have the force of law.
Our conclusion is that the Ordinance No. 6789, C. C. S., is valid.
The judgment appealed from is annulled, the restraining order issued by the civil district court is revoked, and the relator’s demand is rejected, and his suit dismissed, at his cost.
ROGERS, J., recused.

 Post, p. 287.

 Post, p. 288.

 Post, p. 289.

 Post, p. 469.

 Post, p. 289.