225 So.2d 720 (1969)
Paul H. JAMESON, Plaintiff-Appellant,
v.
ST. TAMMANY PARISH POLICE JURY, Defendant-Appellee.
No. 7745.
Court of Appeal of Louisiana, First Circuit.
July 2, 1969.
Rehearing Denied August 28, 1969.
*721 Talley, Anthony, Hughes & Knight, by Charles M. Hughes, Bogalusa, for plaintiff-appellant.
Woodrow W. Erwin, Dist. Atty., Franklinton, and Julian J. Rodrigue, Asst. Dist. Atty., Covington, Milling, Saal, Saunders, Benson & Woodward, by R. King Milling, New Orleans, for defendant-appellee.
Before LANDRY, SARTAIN and MARCUS, JJ.
MARCUS, Judge.
Paul H. Jameson, plaintiff-appellant, is the owner of Green Spring Motel located on Louisiana Highway 21 approximately one mile north of Covington. In May, 1968 Mr. Jameson acquired the property adjoining his motel and proceeded to convert the residence thereon into a restaurant. He then applied to the St. Tammany Parish Police Jury for a liquor license. After considering the application, the license was denied because the use to which Mr. Jameson intended to put his property was in direct conflict with Ordinance 231 which zoned the said property against businesses of all kinds and restricted it to residential purposes only. Pursuant to LSA-R.S. 26:104 Mr. Jameson appealed the decision of the St. Tammany Police Jury to the 22nd Judicial District Court for the Parish of St. Tammany. The Military Road Civic Association, a nonprofit corporation, intervened in these proceedings uniting with defendant in resisting plaintiff's demands. The case was tried on the merits on September 13, 1968. The Police Jury's decision denying Mr. Jameson's application for a liquor license was affirmed by judgment dated December 18, 1968. From this adverse judgment plaintiff has taken an appeal to this Court.
The main thrust of plaintiff's complaint is that Ordinance 231 is illegal as being in violation of the Enabling Act requiring that zoning be carried out in accordance with a "comprehensive plan;" and if Ordinance 231 is not in violation of the Enabling Act, it is unconstitutional as being arbitrary and discriminatory.
In 1954, the State Legislature passed Act 518 of 1954. In general terms this act authorized the legislative body of St. Tammany Parish, being the St. Tammany Police Jury, to divide the parish into districts for zoning purposes. Pursuant to this authority, the Police Jury adopted Ordinance 223 on October 29, 1956 which created and appointed members to a Zoning Commission.
On November 5, 1956, the Zoning Commission held its first organization meeting and made the following policy decisions, to wit: (1) That the entire Parish be zoned "unrestricted" until such time as petitions were presented for zoning a particular area; (2) All such changes were to be *722 made only after petition to the Commission; (3) No building costing more than $1000 should be commenced within the Parish unless and until a building permit be obtained. At this organization meeting, the Zoning Commission further adopted the following temporary regulations which are pertinent to this case. (1) All petitions for zoning presented to the Commission were to be duly signed by bona fide property owners of record of more than 50% of the area desired to be zoned. (2) The petitioners were required to provide a map showing the area. (3) The area was not to be unreasonably large. (4) The petition must clearly define against which type of business or industry it was desired the area be zoned.
On January 30, 1957, a petition was presented to the Zoning Commission by Philip F. Burns on behalf of the residents on what is called "Military Road" requesting the zoning of a particular area against businesses of any kind and restricting the said district to residential purposes only.
On March 3, 1957, a public hearing was held after which the Zoning Commission went into executive session and adopted the following resolution:
"That for the purpose of promoting health, safety, morals, and the welfare of the community the Zoning Commission of St. Tammany Parish recommends to the legislative body of said parish that Zoning District No. 2 be created by them. Said district to be zoned against businesses of any and all kinds, including the placing of billboards, and restricting the said District to residential purposes only * * *"
It was stipulated that the St. Tammany Parish Zoning Commission followed the requirements as set forth in their minutes of November 5, 1956, including the filing of a map covering the land area to be zoned and a petition representing more than 50% of the land owners; and that a public hearing was held in accordance with notice of publication by the Zoning Commission before recommending Zoned District No. 2 to the St. Tammany Parish Police Jury for adoption.
On April 18, 1957 the St. Tammany Parish Police Jury adopted Ordinance 231 which established Zoned District No. 2 and zoned the entire district, which included the property involved in the present litigation, against businesses of all kinds, restricting it to residential purposes only.
At the outset a distinction must be drawn between the legal issues involved in determining the conformity of Ordinance 231 with the Enabling Act as opposed to its constitutionality. In any event, the cases are legion in this State that zoning ordinances which are adopted in conformity with an enabling act, are presumed to have been adopted by the legislative authorities for valid purposes. As stated in Sears, Roebuck & Company v. City of Alexandria:
"Another pertinent general principle of law is that zoning ordinances, adopted in accordance with the procedure set up in the enabling statute, are presumed to have been adopted by the municipal authorities for valid purposes and their discretion will not be interfered with by the courts, unless it is clearly shown that the ordinance is arbitrary, unreasonable and in violation of the enabling statute. Archer v. City of Shreveport, 85 So.2d 337 (2nd Cir.App.1956); State ex rel. Dema Realty Co. v. McDonald, 168 La. 172, 121 So. 613; State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260; 58 Am.Jur. 949 Verbo Zoning, Section 16. The burden is always upon the one assailing the zoning ordinance to overcome this presumption of validity. The court will uphold the ordinance unless it is clearly shown to be incompatible with the enabling legislative act or the constitution. Doubtful cases are decided in favor of the validity of the zoning law." 155 So.2d 776, 780 (La.App.3rd Cir. 1963), Writ denied, 245 La. 83, 157 So.2d 230 (1963).
*723 In Meyers v. City of Baton Rouge, 185 So.2d 278, 286 (La.App.1st Cir. 1966) this Court, after reviewing the jurisprudence on the presumption in favor of the validity of zoning ordinances, concluded that:
"The ordinance in question is entitled to the presumption of validity and may not be declared unconstitutional unless its nullity is clear and palpable. Considering it is an exercise of defendant's police power, it may not be set aside unless abuse of such power is shown to be manifestly arbitrary or without reason or basis to support it."
The jurisprudence as set forth above suggests only two instances in which the presumption of validity can be defeated: first, if it can be shown that the ordinance is clearly and palpably in contravention of the enabling act; and second, if it can be proved that the ordinance is arbitrary or unreasonable.
First, we will consider whether Ordinance 231 violated Act 518 of 1954 which empowered the St. Tammany Police Jury to regulate the construction and use of property within the Parish for the "purpose of promoting health, safety, morals, or the general welfare of the community * * *." (Act 518, Sec. 1).
In order to carry out the purposes established in Section 1 above, the Police Jury was further authorized to:
"* * * divide the said Parish into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate * * *. All such regulations shall be uniform * * * throughout each district, but the regulations of one district may differ from those in other districts." (Act 518, Sec. 2).
The regulations to be established in Section 2 of the enabling act were to be made:
"* * * in accordance with a comprehensive plan and design to lessen congestion in the public streets; to secure safety from fire, to promote health and the general welfare; to provide adequate light and air; to avoid undue concentration of population * * * (and) shall be made with reasonable consideration, among other things to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most proper use of land throughout such municipality." (Act 518, Sec. 3.)
It is obvious from the reading of Section 2 above that the Act contemplated the creation of zoning districts. Nowhere is found any requirement that the whole Parish be divided into districts before any single district could be created. To the contrary, the Police Jury is specifically authorized to "divide the said Parish into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this Act." Section 2 further authorizes the Police Jury to regulate within such district and provides that such regulations shall be uniform. Section 3 requires that the regulations shall be made in accordance with a "comprehensive plan" and with reasonable consideration to the character of the district. No arguments have been advanced by plaintiff-appellant that the Police Jury was not authorized to zone by districts or that the regulations established under Zoned District No. 2 were not uniform. Moreover, the undisputed evidence clearly shows that the regulations were made with reasonable consideration to the character, values and appropriate use of the land. It is contended, however, by the plaintiff-appellant that the requirement of a "comprehensive plan" has not been met, thus rendering Ordinance 231 invalid. We do not agree with appellant on this point.
A thorough reading of Act 518 of 1954 reveals that it was intended that such regulations, which govern the district, be adopted in accordance with a comprehensive plan. This brings us to the point in *724 our inquiry as to what was contemplated by the requirement of a "comprehensive plan" in Section 3 of Act 518 of 1954. The evidence is undisputed that the land included in Zoned District No. 2 has been for many years a well established residential area. Further, it was feared that with the completion of the Pontchartrain Bridge connecting the Covington area with New Orleans there would be an influx of population from New Orleans and Jefferson Parish which would result in new commercial ventures moving into the area. Therefore, it was felt that for the good of the Parish as well as for the residential area involved that the property should be zoned residential in order to maintain the high quality of the neighborhood. The Court feels that this was accomplished by the creation of Zoned District No. 2; and by providing that Zoned District No. 2, in its entirety, be zoned residential and restricted against businesses of all kinds, the requirements of a comprehensive plan were met. Furthermore, the requirements of a comprehensive plan as set forth in Section 3 above were also met in that these regulations were designed "to lessen congestion in the public streets; to secure safety from fire; to promote health and the general welfare; to provide adequate light and air; to avoid undue concentration of population." Another point to be considered in determining whether or not regulations conform to a comprehensive plan must depend on the character of the locality for which they are designed. A comprehensive plan for zoning a large city like New Orleans would naturally have to be more complex than one required for a rural community as in the case at bar. For the foregoing reasons, we are satisfied that Ordinance 231 complies with Act 518 of 1954 and accordingly reject plaintiff-appellant's complaint in this regard.
We address ourselves next to plaintiff-appellant's contention that Ordinance 231 is unconstitutional. The test for determining the constitutionality of a zoning ordinance involves a determination of whether the ordinance is arbitrary or unreasonable. This involves a consideration of the area to which the ordinance is applied and whether there appears to be reasonable grounds for the particular restrictions imposed. The facts show that the area encompassed by Zoned District No. 2 was a geographically unique and homogeneous area which had for many years been a residential zone. The ordinance in question merely attempted to protect this established residential area. Accordingly, the Court cannot say that Ordinance 231 is in any way unreasonable or arbitrary. Furthermore, since the ordinance applies alike to all persons similarly situated, it cannot be said to violate the due process and equal protection clauses of the Constitution. See State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440, 33 A.L.R. 260 (1923); State ex rel. Dema Realty Co. v. Jacoby, 168 La. 751, 123 So. 314 (1929). It is also well settled that since an owner holds property subject to reasonable exercise of police power, he cannot be heard to complain in regard to a zoning ordinance, passed in legitimate exercise of such power, as taking or damaging his property without just compensation in violation of the Constitution. State ex rel. Dema Realty Co. v. Jacoby, supra. We find that Ordinance 231 represents a legitimate exercise of police power by the St. Tammany Parish Police Jury. In view of the foregoing, we conclude that Ordinance 231 in no way violates the Constitution.
For the above reasons the judgment of the lower court in confirming the decision of the St. Tammany Parish Police Jury in denying Paul H. Jameson's application for a liquor permit is affirmed by this Court at appellant's costs.
Affirmed.
LANDRY, Judge (dissenting).
I must respectfully disagree with the majority determination that the procedure adopted by the zoning and planning commission *725 in this instance complied with the mandate of the particular act authorizing the zoning of St. Tammany Parish.
As correctly pointed out by the majority, a law or ordinance establishing zoning regulations is entitled to the presumption of constitutionality.
However, our jurisprudence is also settled to the effect that zoning authority must be exercised pursuant to the terms of the statute conferring the authority to zone. In Cush v. Bossier City, La.App., 149 So.2d 196, the applicable rule is stated thusly:
"The attack made by plaintiffs with respect to the adoption of the amendment to the ordinance is simple and direct, namely, that it violates the specific provisions of the statute as above set forth. Under the facts, we think there is no basis for question as to the validity of this position. There is no conflict in our jurisprudence as to the established principle that the zoning power must be exercised pursuant to the terms of the statute governing the same; Mills et al. v. City of Baton Rouge, 210 La. 830, 28 So.2d 447; State ex rel. Fitzmaurice v. Clay, 208 La. 443, 23 So.2d 177; State ex rel. Holcombe v. City of Lake Charles et al., 175 La. 803, 144 So. 502."
Although no case in our jurisprudence has expressly so held, I gather the clear import of the decisions to be that laws and regulations relative to zoning authority are to be strictly construed. I believe such an interpretation necessary inasmuch as zoning directly, and in many instances adversely, affects an individual's right to the free and uninhibited use and enjoyment of his property, limited only by the rule that no use thereof shall cause damage to another. If our decisions do not so hold at present, it is my view that this principle should be clearly and unmistakably adopted as the rule of interpretation in cases of this nature.
It also appears our jurisprudence is silent on the question of whether zoning can only be accomplished pursuant to a comprehensive plan and, if so, what is meant by the term.
Generally, however, it is held that to comply with the terms of a zoning statute, the authority conferred must be executed in conformity with a well considered comprehensive plan. In this regard, I cite the following from 101 C.J.S. Zoning § 30:
"In order to achieve specified statutory purposes, it is usually required that zoning regulations be in accordance with some well-considered and comprehensive plan; and such regulations must adopt a definite policy. A comprehensive plan, within a statute requiring municipal zoning regulations in accordance with such a plan, means a general plan to control the use of properties in the municipality of a large part thereof by dividing it into districts according to the present and potential use of the properties."
In the case at hand the statute expressly provides for a "comprehensive plan". The majority have held that the requirement of a comprehensive plan does not necessitate immediate zoning of the parish in its entirety. In this conclusion I agree.
But, the majority proceeds to incorrectly, in my judgment, hold the term "comprehensive plan" applies only to each individual zoning district created. In this latter view, I cannot agree.
It appears the majority in so holding rely upon State ex rel. Civello v. City of New Orleans, 154 La. 271, 97 So. 440. However, a careful reading of Civello, supra, does not support the conclusion reached by the majority of this court. It is to be noted that the quoted section of the pertinent statute contained no reference to or requirement of a "comprehensive plan". Moreover, as I interpret Civello, supra, it is authority merely for the proposition that an entire municipality (parish) need not be zoned as a whole at one and the same time but that segments or portions may be zoned in succession.
*726 In my judgment the requirements of Section 3 of Act 518 of 1954 that "Such regulations shall be made in accordance with a comprehensive plan and design to lessen congestion * * *." can only logically apply to a comprehensive plan to zone the entire parish with the view of protecting property values and encouraging and promoting the most appropriate use of land throughout the entire area encompassed in the statute. In fact the statute under consideration in Section 3 thereof expressly so provides. The second sentence of Section 3 states in part: "Such regulations shall be made with reasonable consideration * * * to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality (sic)."
It appears elementary to me that the purpose of any zoning statute and ordinance adopted pursuant to such authority is to provide an orderly development of the entire area thereby subject to zoning. Equally basic, in my view, is the premise that an orderly development of the whole, designed to insure the most appropriate use of land throughout the entire area can only be accomplished through the adoption of a comprehensive plan which, while it need not necessarily zone the entire area at a single stroke, nevertheless formulates a definite, stated and announced general policy for the unit as a whole.
Here it is evident that there was no such comprehensive plan or general policy unless it can be said that a comprehensive plan may consist of an announced intention to have no plan whatsoever. That is exactly what was done in the present instance.
As stated in the majority opinion the zoning commission in question zoned the entire parish "unrestricted" until such time as petitions would be presented for zoning a particular area. Of special importance, so far as I am concerned, is the fact that nowhere in the record does there appear a definition of the term "unrestricted" as used by the Commission and subsequently employed by the Police Jury in the zoning ordinance. In the absence of a contrary definition, I can only conclude the term was employed in its usual and ordinary sense meaning without limitation or impediment. On this basis, to zone unrestricted is the equivalent of no zoning whatsoever which would in effect leave all areas free to develop at will until such time as a petition was presented by property owners to zone a specified area. This was the precise policy followed in this instance. It was therefore a policy of having no policy.
The testimony of Philip P. Burns, former Secretary to the Zoning Commission, is uncontroverted to the effect there was no comprehensive or master plan for development of the entire parish. He further testified the Commission was not provided any professional help, service or assistance, consequently no studies or surveys preceded the Commission's recommendations to the Police Jury upon which the latter body predicated its zoning ordinances and regulations.
In this regard I quote the following excerpt from Mr. Burns' testimony appearing at page 71 of the transcript:
"A The commission was set up without a comprehensive plan, with the intentions of the commission working towards getting a plan built for the Parish.
Q That's correct and you know that of your own knowledge, don't you?
A Certainly."
Mr. Burns also made it clear that when a petition was presented to zone a particular area, no study was made to determine the feasibility or reasonableness of the proposal but rather the decision was based on the recommendation of the Commission member who came from the part of the Parish to be affected. He explained that the Commission relied upon the knowledge of the member from that portion of the Parish. He further explained in effect that *727 this was the best the Commission could do since none of its members were trained or experienced in matters pertaining to zoning and no professional assistance was provided by the Police Jury.
Further, Mr. Burns related at page 76 of the transcript:
"A * * * I understood that the Planning Commission was there to do this because it was new and there was no professional help available yet but I understood the Police Jury was working towards getting professional help and we were taking care of the situation.
THE COURT: As it arose.
A. As it arose and particularly for this reason. The causeway was about to be completed and there was a great deal of activity in this area and the expectations of commercial ventures and there were commercial ventures that had already started. They had to be handled as they came up.
THE COURT: Without any other assistance or planning to go by?
A. That's right. We were doing this as a civic duty."
The foregoing testimony graphically illustrates the dilemma faced by the Commission and clearly explains the lack of a comprehensive plan. It unmistakably shows that here a group of civic minded individuals were exerting their utmost efforts to perform a civic duty to the best of their limited ability under the circumstances. Certainly their motives are not to be impugned in the least. Nevertheless, regulations which restrict the free use and enjoyment of property rights must meet the constitutional requirements of due process. In this instance they do not.
I therefore respectfully dissent.