592 So.2d 908 (1991)
SAVE OUR NEIGHBORHOODS, et al.,
v.
ST. JOHN THE BAPTIST PARISH, et al.
No. 91-CA-588.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 1991.
Writ Denied March 20, 1992.
*909 Gilbert R. Buras, Jr., Metairie, for plaintiffs/appellants Save Our Neighborhoods, et al.
G. Charles Lorio, Jr., Rodney A. Brignac, Laplace, for defendants/appellees St. John The Baptist Parish, et al.
Jules A. Carville, III, Laplace, Daniel Lund, Brian P. Quirk, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for intervenor/appellee Aristech Chemical Corp.
Before BOWES, GOTHARD and CANNELLA, JJ.
GOTHARD, Judge.
This appeal is from a zoning decision. Save Our Neighborhoods (SON), Ann M. Alexander, Anthony Alexis, and other individual residents of Garyville and Mount Airy have appealed a judgment in favor of defendants St. John the Baptist Parish, the members of the Parish Council, the Parish President, and Aristech Chemical Corporation as intervenor. The plaintiffs filed a petition for declaratory judgment and injunctive relief, challenging the Council's adoption of Ordinance 89-71, rezoning a 432 acre tract purchased by Aristech. The property is located on the east bank of the Mississippi River in St. John the Baptist Parish between River Road and Airline Highway and is described as lots 3 and 4 of the former Angelina Plantation.
When Aristech acquired the land, the larger part of the property, between the Kansas City Railroad and River Road, was zoned residential, single family (R-1), while the smaller portion lying between the Kansas City Railroad and the Airline Highway was zoned Light Industrial (I-1). The Kaiser Aluminum and Chemical Company plant site, zoned heavy industrial (I-3) abuts it on the west, and to the east are the Mount Airy and Plantation residential communities, zoned residential (R-1). Ordinance 89-71 changed the zoning of the Aristech property from R-1 to heavy industrial (I-3), which would allow Aristech to construct and operate a chemical facility for production and distribution of phenol, acetone, and cumene.
The St. John the Baptist Council adopted Ordinance 89-71 on August 24, 1989. Save Our Neighborhoods and 150 residents individually filed suit on October 4, 1989 against the Parish, the Parish Council, the nine members of the Council in their capacities as members, and Lester Millet, Jr. in his capacity as President of the Council. On November 30, 1989, Aristech filed a petition of intervention.
On October 24, 1990, the trial judge, after a five day trial, dismissed the plaintiff's suit, finding that they had failed to show that the actions of the Parish Council were arbitrary and capricious as a matter of law. This appeal followed.
The appellant assigns the following errors on the part of the trial judge: (1) failing to find that the rezoning was piecemeal zoning, requiring a heightened level of scrutiny; (2) finding that the Council did not act arbitrarily and capriciously when (a) it failed to undertake a reasonable evaluation *910 of the effects of the proposed rezoning upon the health, safety, and welfare of the citizens of St. John the Baptist Parish, and (b) it deliberately refused to inform itself of the requirements of the locational criteria of the parish zoning ordinance; and (3) failing to find that the St. John the Baptist Parish Planning and Zoning Commission had approved the rezoning without careful study.
In the recent case of Palermo Land Co. v. Planning Com'n, 561 So.2d 482 (La.1990) the Supreme Court undertook a very thorough consideration of Louisiana zoning law, in particular rezoning decisions. It reaffirmed the principle that all zoning decisions are presumed to be valid, and the burden rests upon the challenger to overcome this presumption. The burden of proving a rezoning ordinance invalid is extraordinary. Four States Realty, Inc. v. City of Baton Rouge, 309 So.2d 659 (La. 1975); Hernandez v. City of Lafayette, 399 So.2d 1179 (La.App. 3rd Cir.1981); Palermo Land Co., supra, at 490. Zoning is a legislative function. Under its police power, a governing body has the authority to amend, supplement, change, modify, or repeal existing ordinances. LSA-R.S. 33:106, 33:4725.
The court in Palermo Land, supra, 491-492, quotes an early case in setting out the scope of judicial review:
... In State ex rel. Civello, 154 La. 271, 97 So. 440 (1923), this court stated:
It is not necessary, for the validity of the ordinance in question, that we should deem the ordinance justified by considerations of public health, safety, comfort, or the general welfare. It is sufficient that the municipal council could reasonably have had such considerations in mind. If such considerations could have justified the ordinances, we must assume that they did justify them.
* * * * * *
It is not the province of the courts to take issue with the council. We have nothing to do with the question of the wisdom or good policy of municipal ordinances. If they are not satisfying to a majority of the citizens, their recourse is to the ballotnot the courts.
Id. 97 So. at 444....
The court goes on to say:
A challenge to a zoning decision in Louisiana is a de novo proceeding in which the issue is whether the result of the legislation is arbitrary and capricious, and therefore a taking of property without due process of law. Hernandez v. City of Lafayette, supra; Westside Lumber & Supply v. Parish of Jefferson, 357 So.2d 1384 (La.App. 4 Cir.1978). Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.
The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in each parish. The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of each community. Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority. Four States Realty, supra, and cases cited therein.
St. John the Baptist Parish first enacted a comprehensive zoning ordinance in 1983, promulgating an official zoning map in 1986. The ordinance sets out procedures for changing zoning classifications that include notice and public hearings of the Zoning and Planning Commission and the Parish Council.
Before the zoning ordinance was enacted, the owners of lots 3 and 4 of Angelina Plantation entered into restrictive area covenants *911 limiting the use of the property to agricultural and/or industrial use only. A notarial act, executed on April 7, 1976, was duly recorded in the office of the clerk of court for St. John the Baptist Parish; nevertheless, the official zoning map of 1986 classified the tract as residential, R-1, except for a small parcel zoned light industrial, I-1.
Aristech purchased the land, allegedly unaware of the residential zoning, and finding its location highly desirable for a chemical plant, with access to materials, the river, Highway 61, and to the Illinois Central Railroad and Kansas City Southern Lines. Aristech applied for a reclassification to heavy industrial, I-3, on July 14, 1989.
The Planning and Zoning Commission convened a public hearing on August 8, 1989, at which a total of thirty witnesses and three attorneys appeared. The Commission voted 9-0 to recommend the reclassification. Afterward seven Council members visited two Aristech plants in Ohio and West Virginia, meeting with some residents of the area and company officials. The required public hearing of the Parish Council was held on August 24, 1989, with twenty-five witnesses. The Council then voted 5-4 in favor of rezoning the property to heavy industrial, enacting Ordinance 89-71.
Heightened Scrutiny
The plaintiffs argue that the rezoning of the Aristech plot requires a heightened level of scrutiny because it is piecemeal zoning, as defined in Palermo Land, supra, at 490:
... "Piecemeal" zoning "usually refers to a rezoning which does not involve a substantial portion of the land within a community and which was not undertaken after a careful study by the planning staff to implement a broad public policy." Ziegler, Rathkopf's The Law of Zoning and Planning, sec. 1.04 (1989)....
The plaintiff's expert, Dr. Anthony Mumphrey, testified that in his opinion the rezoning was piecemeal, as it was not considered in the context of a comprehensive plan for land use. Apparently, only the Comprehensive Zoning Ordinance and the official zoning maps serve as a comprehensive land use plan in St. John the Baptist Parish. Ordinance, Article II, Purpose states in part: "... Reasonable consideration has been made as to the character of each district and its peculiar suitability for particular uses, and with a view of conserving the value of land and structures and encouraging the most appropriate use of land throughout the Parish." The defendants' experts denied that the rezoning was piecemeal, as the land was contiguous with Kaiser's property and the ordinance merely extended the I-3 district. On this point we agree with Aristech's position. However, we point out that although a heightened scrutiny "may be applicable" in cases of spot or piecemeal zoning, the burden on the challenger is no different. The test remains the same: whether or not a real or substantial relationship to the general welfare is lacking. Palermo Land, supra, at 490.
Effects Upon Health, Safety And Welfare
The plaintiffs aver that the Parish Council abrogated its responsibility to inquire into potential adverse effects upon the health and safety of the residential communities bordering the Aristech site. They called as witnesses the five Council members who voted in favor of the ordinance. The gist of their testimony was that they were satisfied that Aristech would run a safe operation, in a new state-of-the-art plant, and that compliance with the state permitting agencies would assure safety. Four of the five men had visited Aristech's Ohio and West Virginia plants, had talked with citizens living near the plants, and found nothing objectionable. William Terry, a pharmacist, made an unannounced visit to a hospital near the Ohio plant, where the administrator convinced him that there were no industry related environmental problems. He did learn that there had been one or two spills over a ten year period, but no one had been hospitalized other than for precautionary examination in the emergency room. The *912 councilmen's testimony indicated that although the economic impact on the area was the overriding consideration, they wanted assurance that the operation would be safe.
Dr. Jay Means, professor of environmental chemistry and toxicology at LSU testified for the plaintiff at the Council hearing and at trial, where he said that phenol is a "documented carcinogen" and benzene, used in its manufacture, is a "documented mutagen." He estimated that a resident living 70 years at the fence line would have a 1 in 50 chance of contracting cancer. Under cross-examination Means was unable to explain satisfactorily his calculation of the cancer potency factor from which he derived the cancer risk factor. Furthermore, his projection was based upon his assumption of emissions at the western boundary of the property, contiguous to Kaiser, where the production of chemicals was to take place; he made no projections for the eastern side, adjoining residential property. The Council also heard from a second expert, Darryl Stevens, president of the ecology facility at Baton Rouge, who spoke for the plaintiffs at the hearing on the reported high ranking of Aristech plants for accidental toxic releases. He was not called as a witness at trial.
Aristech's manager of operations for thermoplastic polymers, Tom Hooten, presented the layout of the plant. The operating areas of the plant would be located west of the center line of the 2,112 feet wide tract. He stated that the design had taken into account the environmental safety of the citizens and described in detail the safety features of the proposed plant. When asked about the plant's flare, he replied that it would be at least 200 feet high and would not burn continuously, only at a start up or shut down, which happened very seldom. Paul Kaplow, Aristech's vicepresident in charge of environmental affairs and occupational health and safety, testified that his mission was to make Aristech the leader of health, safety, and the environment. He stated that it was corporate policy to meet or exceed every applicable regulation in those areas. He pointed out that the plant would be built on a concrete pad, which would serve as a barrier to soil contamination. Tanks and piping were to be installed above grade, and there would be no underground storage of materials.
In rebuttal, the plaintiffs presented Victoria Arroyo, acting director of Policies, Analysis, and Planning for the Louisiana Department of Environmental Quality, appearing in her official capacity. She pointed out that a DEQ permit is not intended as a full guarantee of the safety of people living very close to an industrial plant. DEQ will act in an advisory capacity if requested to do so but has no siting criteria for chemical plants and makes no decisions. Ms. Arroyo testified also that EPA and DEQ risk assessments do not take into account the multiplicative effects of many chemicals from the different chemicals from one facility or from several facilities; instead, regulations require that the agencies look at one chemical from one plant at a time.
As pointed out earlier, the court said in Palermo that if it appears from the record that "appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld." Palermo Land, supra, at 492. This court cannot decide whether or not the plant would be safe, only whether the safety/health factor was adequately considered by the Council in making its decision. The transcripts of the Council meeting and the trial indicate that the Council members received considerable information on safety, health, and environmental factors and determined that the zoning change was in the best interest of the public.
Buffer Zone
The plaintiffs next argue that the Council failed to abide by the siting criteria of its own zoning ordinance.
Section 6.1406(1)(a)(2) provides:
An I 3 District or Use Area shall be so located a minimum 2,000 feet away from a concentration of one dwelling unit per acre (1 du/ac) gross area.
A "dwelling unit" is defined as, "A building or portion thereof providing complete *913 housekeeping facilities for one person or one family."
An amending ordinance, 88-68, adopted on July 28, 1988, reads as follows, in pertinent part:
An ordinance amending Ordinance 86-36 (adopting the Official St. John the Baptist Parish Zoning Map) to include the following modifications:
. . . .
Parishwide: Where an Industrial 3 district abuts a Residential 1 District, an area six hundred (600) feet wide from the R-1 District shall be rezoned Industrial 1, up to State Highways.
During the Council meeting the possibility was raised that Ordinance 89-71 was in conflict with the 2,000 feet locational requirement. Councilman Joel McTopy moved to table the vote until it could be determined whether or not the requirement would have to be changed in conjunction with the new ordinance. The Parish Attorney had stated that at that time he could not give an opinion on precisely how to calculate the density within the 2,000 feet zone. The motion failed and the vote was taken.
At trial Mark Howard, Chairman of the Planning and Zoning Commission, explained that he had counted all the dwellings by driving from the lower eastern boundary of the property to a point more than 2,000 feet to the east and then drove north. He found 225 homes, then calculated the per acre number by dividing 225 into 432 acres, which he estimated to be the area within 2,000 feet. He used 432 acres, the Aristech area, because "Coincidentally, the ordinance calls for two thousand feet and because I am going to the same depth north the acreage would be about the same." The resulting ratio was one house for approximately two acres. Howard testified further that he had uniformly applied that method in all requests for industrial zoning. Counsel for the plaintiffs contends that Howard's method, dividing the number of dwellings by Aristech's acreage, is absurd. In fact, the acreage number was used simply as a convenient calculation, because the dimensions of the property and of the adjoining 2,000 feet wide strip are virtually the same. The appellants' view is that the ordinance means that there must be 2,000 feet between an I-3 use and any area where there is more than one dwelling unit per acre. Their expert, Dr. Mumphrey, opined that if any acre within 2,000 feet is found to contain more than one dwelling unit, I-3 is disallowed. As the subdivision of Plantation Oaks, contains more than one unit per acre, the criterion has not been met.
Dr. Dennis Ehrhardt, head of the Department of Planning at the University of Southwestern Louisiana, was the defendants' expert in planning and zoning and replied in the affirmative when asked if the zoning change conformed to the location criteria set forth in Section 6.1046(1)(a)(2). In his reasons for judgment, the trial judge stated that he found no error in the method used to calculate the locational requirements of the ordinance.
In order to provide a 600 feet wide transitional zone to be classified I-1, light industrial, required by Ordinance 88-66, Aristech's plot designations provide for auxiliary uses, e.g. administrative buildings, utility station, guard house, to be placed on the eastern half of the tract. The property uses for that half would be in conformity with zone I-1. Ordinance 89-71 does not specifically provide for the I-1 zoning of the 600 feet zone; however, Aristech interprets Ordinance 88-66 as providing the zoning automatically.
The plaintiff's expert, Dr. Mumphrey, testified that a 600 feet transitional zone cannot exist when Ordinance 89-71 specifically zones the property I-3; furthermore the land uses in the proposed plan are accouterments of the I-3 zone. Aristech's expert, Dr. Ehrhardt, would not commit himself definitely to an interpretation but said he assumed that the provisions of Ordinance 88-66 automatically applied to Ordinance 89-71. He was asked, assuming the transitional zone did exist, whether Aristech could obtain a variance to extend its I-3 use into the transitional zone. In Dr. Ehrhardt's opinion that would not be allowed, because it would constitute a *914 change in classification. The judge stated in his reasons for judgment that, "... the language of Ordinance 88-68 is such that the 600 feet buffer zone is applicable to Ordinance 89-71 without being specifically mentioned therein."
The two statutory provisions relative to locational requirements and buffer zones are subject to differing interpretations. We cannot say that the interpretations accepted by the court are in error.
In conclusion, we understand the fears and concerns of the residents of St. John the Baptist Parish who live near the proposed chemical plant and who had believed that the adjoining area would remain residential. However, zoning regulations may be amended from time to time under our state law and a property owner may not rely on the continued existence of a classification in his favor. LSA-R.S. 33:4725; Palermo Land, supra. While this court might have rendered a different decision, we may not substitute our judgment for that of elected representatives, when the decision is supported by the trial record. We agree with the trial court that the plaintiffs did not carry their burden of proof that the Council of St. John the Baptist Parish acted arbitrarily and capriciously.
For the reasons assigned above, the judgment appealed from is affirmed. Each party is to bear its own costs.
AFFIRMED.